[Civ. No. 22425.   Second Dist., Div. Three.   June 19, 1958.]

BENJAMIN M. GILMORE, Appellant, v. THE PERSONNEL BOARD OF THE STATE OF CALIFORNIA et al., Respondents.

Vaino Hassan Spencer for Appellant.

Edmund G. Brown, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondents.

WOOD (Parker), J.—Petitioner was dismissed by the State Personnel Board from his civil service position as a drivers'

license examiner in the Department of Motor Vehicles. He sought a writ of mandate, in the superior court, compelling the Personnel Board to reinstate him in the position. His petition was denied. He appeals from the judgment.

Appellant contends that the Personnel Board proceeded in excess of its jurisdiction and abused its discretion in dismissing him.

On November 17, 1930, the Department of Motor Vehicles employed petitioner as a drivers' license examiner. He attained permanent civil service status in that position. When petitioner was first employed, and for a number of years thereafter, the department did not require examiners to wear a uniform. On August 29, 1938, the director of the department issued an order which provided that all examiners were to "provide themselves" with a uniform of the military type, as specified in the order, by November 1, 1938. Petitioner purchased a uniform of the specifications stated in the order, and from November 1, 1938, until October 28, 1943, he wore a uniform which complied with the specifications. On October 28, 1943, the director issued a bulletin which was to the effect that thereafter the examiners would not be required to wear a uniform. The bulletin stated that the reason for discontinuance of the requirement was that it was impossible (as a result of the shortage of material caused by the war) for examiners to secure replacements or to maintain uniforms in a satisfactory condition. The bulletin also stated that examiners must wear a badge when on duty; and that when "uniforms are resumed, a distinctly different type may be required."

On June 17, 1947, the director issued a memorandum which was to the effect that examiners would be required to wear a uniform, and that notice would be given before such an order was made. In that memorandum, the examiners were requested to supply themselves with, and to wear, uniform clothing as specified in the memorandum. On October 19, 1954, the director issued an order which provided that, effective July 1, 1955, all examiners "will wear" the regulation dress while they were on duty. The regulation dress, as specified in the order, included a two-piece business suit of 12-ounce slate gray gabardine, white shirt, blue tie, blue or black socks, and black shoes. The order provided that it was optional as to where the clothing was to be purchased; that a certain store in Los Angeles had arranged to have the suits available by March 1, 1955; and that the approximate price for the two-

piece suit was $60. The order provided further that it was permissive for any male employee of the department (other than examiners) to wear the regulation dress, and that it was permissive for any female employee to wear a skirt of slate gray gabardine and a white blouse. On July 1, 1955, five examiners, including petitioner, reported for work at the Los Angeles office of the department wearing clothing other than the regulation dress specified in the order. The manager of the office issued a memorandum which was to the effect that any examiner who was not wearing regulation dress should advise the manager the reason therefor. Four of those five examiners advised the manager that the stores from which they had ordered uniforms could not deliver the uniforms on that date. Petitioner advised the manager, by a memorandum, that his reasons for not wearing the regulation dress were multiple, and that one of the reasons was personal economy. Also, in that memorandum he asked whether the department would pay for the regulation dress.

On August 11, 1955, the director issued an order in which he stated that September 1, 1955, would be the effective date on and after which regulation dress would be required.

Petitioner was on vacation the first five days of September. On September 6, 1955, he reported for duty, and at that time he was wearing a blue gabardine suit. He told the manager that he had not ordered a uniform. The manager told petitioner that he was "on suspension." On September 9, 1955, a notice of punitive action was served on petitioner. The notice stated that petitioner was suspended "without pay," from service in his position, for a period of three days, commencing September 6, 1955, and terminating September 9, 1955, and that the causes for his suspension were insubordination, wilful disobedience, and other failure of good behavior or acts during duty hours which were incompatible or inimical to the public service, as set forth in subdivisions (f), (p), and (s) of section 19572 of the Government Code,[1] in that when he reported for duty on September 6, 1955, he failed and neglected to wear the regulation gray gabardine suit. (On September 16, 1955, a copy of the notice was filed with the Personnel Board.)

---

[1]Section 19572 of the Government Code provides, in part: "Each of the following constitutes cause for discipline of an employee, . . . (f) Insubordination. . . . (p) Wilful disobedience. . . . (s) Any other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the public service."

On September 12, 1955, petitioner reported for duty, and at that time he was wearing a blue gabardine suit. He told the manager that he had not obtained a uniform. The manager told petitioner that he was "under suspension," and that the period of suspension was five days.

On September 19, 1955, petitioner reported for duty, and at that time he was wearing a blue gabardine suit. The manager told petitioner that he was "being suspended" for 10 days.

On September 19, 1955, a notice of punitive action (regarding the suspension of September 12) was served on petitioner. The notice was similar to the previous notice, except that the date stated therein, as the date on which petitioner had failed to wear the regulation gray gabardine suit, was September 12, 1955, and the period of suspension was five days, commencing September 12, 1955, and terminating September 16, 1955; and except that the notice referred to the previous suspension and the reasons for such suspension. (On September 23, 1955, a copy of the notice was filed with the Personnel Board.)

On September 21, 1955, petitioner filed answers to the notices which were served on him on September 9 and September 19. In his answers petitioner alleged, among other things, that he had "at all times, made known to his superior his willingness to wear such uniform, provided the cost of furnishing same was not passed on to" him; and that he had inquired as to whether the department would furnish the regulation dress, or whether he would be reimbursed for the cost of furnishing the regulation dress, and he had not received an answer to his inquiries. In his answer to the notice which was served on him on September 19, petitioner requested an early hearing of the matter.

On October 3, 1955, petitioner telephoned the manager of the department and said that he (petitioner) was ill and he could not return to work on that date. On October 3, 1955, a notice of punitive action (regarding the suspension of September 19) was served on petitioner. The notice was similar to the previous notices, except that the date stated therein, as the date on which petitioner had failed to wear the regulation gray gabardine suit, was September 19, 1955, and the period of suspension was 10 days, commencing September 19, 1955, and terminating September 30, 1955; and except that the notice referred to the two previous suspensions and the reasons for such suspensions. (On October 4, 1955, a copy of the notice was filed with the Personnel Board.)

On October 11, 1955, petitioner filed an answer to the notice of October 3. The allegations in that answer were in substance the same as the allegations in his previous answers.

On October 18, 1955, petitioner reported for duty, and at that time he was wearing a blue gabardine suit. The manager inquired whether petitioner intended to buy a uniform, and petitioner replied, "Not unless I am compelled to." The manager told petitioner to "go home."

On October 31, 1955, a notice of punitive action was served on petitioner. The notice provided that petitioner was discharged from duty and that the causes for his discharge were insubordination, wilful disobedience, and other failure of good behavior or acts during duty hours which were incompatible with or inimical to the public service, as set forth in subdivisions (f), (p), and (s) of section 19572 of the Government Code, which causes were more particularly set forth in the notice. The notice referred to the suspensions of September 6, 12, and 19, and the causes therefor, and the notice stated that when petitioner reported for duty on October 18, 1955, he failed and neglected to wear the regulation gray gabardine suit. The effective date of petitioner's discharge, as stated in the notice, was October 18, 1955. (On November 2, 1955, a copy of the notice was filed with the Personnel Board.)

On November 14, 1955, petitioner filed an answer to the notice of October 31. The allegations of that answer were in substance the same as the allegations in his answer regarding the first suspension. Also, in the answer to the notice of October 31, he stated, in effect, that an investigation regarding the three notices of suspension had been set for hearing on November 22, 1955; and he requested that the Personnel Board consolidate the hearing regarding the notice of dismissal with the hearing regarding the three notices of suspension. Apparently the request was granted.

On November 22, 1955, a hearing on the four notices was held before a hearing officer of the Personnel Board. Petitioner and his counsel attended the hearing, and evidence was received, and the matter was submitted for decision.

On December 16, 1955, the hearing officer filed a proposed decision which was to the effect that the punitive actions against petitioner be revoked and that petitioner be returned to his position.

On January 7, 1956, the Personnel Board rejected the proposed decision of the hearing officer and ordered that the

matter be argued before the board. On March 23, 1956, the department's attorney and petitioner's attorney argued the matter before the board.

On May 18, 1956, the board made detailed findings of fact which were in substance the same as the facts hereinabove set forth regarding the employment, the orders, the conduct of petitioner, the suspensions, the discharge, and the hearings. The board also found, among other things, that the requirement that the examiners wear the regulation dress is reasonably related to the powers and duties of the department; and that the actions and conduct of petitioner, as set forth in the decision, constitute "insubordination, wilful disobedience, and other failure of good behavior and acts during duty hours which are incompatible with and inimical to the public service within the meaning of subdivisions (f), (p) and (s) of Section 19572 of the Government Code"; and that "the causes, and each of them, for which the punitive actions were imposed . . . are, separately and severally, sufficient to support the punitive actions taken." The decision of the board was that the punitive actions against petitioner were sustained; that petitioner was suspended "without pay" from his position for a period of three days, effective September 6, 1955, and for a period of five days, effective September 12, 1955, and for a period of ten days, effective September 19, 1955; and that petitioner was dismissed from his position, effective October 18, 1955.

On August 15, 1956, petitioner demanded reinstatement in his position and payment of back salary from September 6, 1955, to date of reinstatement.

On August 17, 1956, petitioner sought a writ of mandate, in the superior court, compelling the board to reinstate him in the position of examiner. The petition alleged that the punitive actions suspending and discharging petitioner were discriminatory and invalid in that : (1) the department did not have authority to compel him to purchase uniforms at his own expense as a condition of continued employment; (2) there is no reasonable relation between the prescribed dress and the efficient discharge of the duties of the department; (3) the evidence was insufficient to sustain a finding that petitioner was wilfully disobedient, insubordinate, and had committed acts incompatible with and inimical to the public service; (4) the findings are "so contrary to the evidence as to constitute an abuse of discretion"; and (5) petitioner was subjected to four different penalties for the commission of a single act. An alternative writ was issued.

The board filed an answer. No testimony was presented at the hearing in the superior court, and the matter was submitted on the pleadings, the transcript of the testimony and proceedings before the examiner, and the exhibits introduced at that hearing. The court adopted the findings of the board and also found, among other things, that the board afforded petitioner due process under the law; that the findings of the board are supported by the evidence; that the decision of the board was supported by the findings; and that the board was not arbitrary or unreasonable in the matter. The petition for a writ of mandate was denied, and the alternative writ was discharged.

Section 1094.5 of the Code of Civil Procedure pertains to a review of an administrative order or decision in a mandamus proceeding. Subdivision (b) of that section provides: "The inquiry in such a case [mandamus proceeding] shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

Appellant contends that the Personnel Board proceeded in excess of its jurisdiction in dismissing him. He argues that the Director of Motor Vehicles had no statutory or implied power to require appellant to wear the regulation clothing, and therefore the order of the director was invalid and the board proceeded in excess of its jurisdiction in dismissing him for his failure to comply with the order of the director.

Section 105 of the Vehicle Code provides, in part: "The department [of motor vehicles] shall be under the control of . . . the Director of Motor Vehicles . . . ." Section 106 of that code provides, in part: "The director [of motor vehicles] may appoint . . . (b) Such . . . employees as may be necessary for the proper discharge of the duties of the department." Section 267 of that code provides, in part: "Upon application for an original [operator's or chauffeur's] license the department shall require an examination of the applicant and shall make provision therefor before an officer or employee or authorized representative of the department . . . ." Section 268 of that code provides, in part: "The examination shall include a test of the applicant's knowledge and understanding of the provisions of this code governing the opera-

tion of vehicles upon the highways, his understanding of traffic signs and signals and the applicant shall be required to give an actual demonstration of his ability to exercise ordinary and reasonable control in operating a motor vehicle by driving the same under the supervision of an examining officer." Section 11152 of the Government Code provides, in part: ". . . So far as consistent with law the head of each department may adopt such rules and regulations as are necessary to govern the activities of the department . . . ." Section 128, subdivision (b), of the Vehicle Code provides: "The director [of motor vehicles] may adopt and enforce such rules and regulations as may be necessary to carry out the provisions of this code relating to said department."

In *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal.2d 796 [151 P.2d 505, 157 A.L.R. 324], it was said, at page 810: "It is well settled in this state that governmental officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers."

In the present case there was evidence that on several occasions, prior to the order requiring uniforms, an applicant for a driver's license entered the car of another applicant and the two applicants went several blocks before either of them became aware that the other one was not an examiner; that it is less objectionable to husbands and fathers if their wives and daughters take driving tests with a uniformed examiner than it is if their wives and daughters take driving tests with a nonuniformed examiner; and that a uniform makes it easier to identify the examiners. The board and the court found, as above stated, that the requirement that the examiners wear the regulation dress is reasonably related to the powers and duties of the department. There was substantial evidence to support that finding.

Appellant argues further to the effect that the order of the Director of Motor Vehicles that appellant wear the regulation clothing reduced appellant's salary by the amount of the cost of the clothing; that the order was contrary to his vested contractual right to receive his "full salary," and therefore the order was invalid. "The terms and conditions of civil service employment are fixed by statute and not by contract." (*Boren* v. *State Personnel Board*, 37 Cal.2d 634, 641 [234 P.2d 981].) "It is well settled that public employees have no vested right in any particular measure of

compensation or benefits, and that these may be modified or reduced by the proper statutory authority.'' (*Butterworth* v. *Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838].)

■ ''When an employee of the state, under civil service, accepts a position, he does so with knowledge of the fact that his salary, and, indeed, his conduct, are both subject to the law governing such matters, as set forth in the statute and the rules and regulations of the commission.'' (*Raymond* v. *Christian,* 24 Cal.App.2d 92, 100 [74 P.2d 536].)

■ Appellant did not have a vested right to any specific amount of salary.

■ Appellant argues further that, under the provisions of section 18850[2] of the Government Code, his salary could be reduced only by the board after a hearing under the provisions of section 18851[3] of that code; that the order of the Director of Motor Vehicles was invalid for the reason that it, in effect, reduced appellant's salary, without the director having been authorized by the board to reduce the salary, and without the appellant having been afforded a hearing. The board is authorized by section 18850 of the Government Code to establish the salaries of civil service employees and, under the provisions of section 18851 of that code, the board should give an employee a reasonable opportunity to be heard regarding a change of salary. ''Salary,'' however, as used in those sections, is defined in section 18539 of that code, as follows: '' 'Salary' . . . means the amount of money or credit received as compensation for service rendered exclusive of mileage, traveling allowances, and other sums received for actual and necessary expenses incurred in the performance of the State's business, but including the reasonable value of board, rent, housing, lodging, or similar advantages received from the State.'' The order of the director did not provide that the cost of the designated clothing should be deducted from appellant's salary. There was evidence, at the hearing before the board, that a gray gabardine suit of the kind designated in the order could be purchased at prices ranging from $40 to $68. There was no evidence that the cost of such clothing

[2]Section 18850 of the Government Code provides, in part: ''The board [Personnel Board] shall establish and adjust salary ranges for each class of position in the state civil service.''

[3]Section 18851 of the Government Code provides: ''Reasonable opportunity to be heard shall be provided by the board [Personnel Board] to any employee affected by a change in the salary range for the class of his position.''

was more than the cost of clothing which appellant ordinarily wore, and provided at his own expense, while performing his duties. It was not contended that the clothing designated in the order was of a design which was impracticable or unsuitable for appellant in the performance of his duties, or that the clothing was of peculiar or odd design, or any design which would subject appellant to ridicule or scorn. On the contrary, it appears that appellant did not object to the style or design of the designated clothing, and it appears that he was willing to wear the clothing if it were furnished by the Department of Motor Vehicles. Persons who occupied administrative positions in the department conferred with a committee of examiners regarding the kind of uniform to be used. At a convention of examiners, a resolution which was "substantially in favor" of the business-suit type of uniform (prescribed by the director) was adopted. The suit ordinarily worn by appellant and the suit designated in the order were of the same kind of material, i.e., gabardine. It seems that the principal difference in the appearance of the suits was the color—appellant's suit was blue and the designated suit was gray. It cannot be determined from the evidence that appellant's expense for clothing would be increased, over his usual clothing expense, if he complied with the order. Of course, under the order there would not be any deduction in the amount of compensation that actually would be paid to appellant; and it does not appear that indirectly, by reason of the cost of the designated clothing, appellant's compensation would be reduced. It does not appear that the order was unreasonable, or that compliance with the order would reduce appellant's salary.

Appellant contends that the Personnel Board denied him procedural due process of law. He argues that the director and the members of the board knew that appellant's objections were directed to the matter of purchasing the articles of clothing at his expense; that it was apparent that appellant believed that he had the right to have the question, regarding the clothing, adjudicated by the board; that the action of the board in dismissing him, without affording him a prior opinion as to the validity of the order regarding clothing, constituted a denial of due process of law and was an abuse of discretion.

Section 19574 of the Government Code provides, in part: "The appointing power, or any person authorized by him, may take punitive action against an employee . . . by notifying the employee of the action, pending the service upon him

of a written notice. Punitive action is valid only if a written notice is served on the employee and filed with the board not later than fifteen calendar days after the date of such action. The notice [of punitive action] . . . shall include . . . (d) a statement advising the employee of his right to answer the notice and the time within which that must be done if the answer is to constitute an appeal." Section 19575 of that code provides, in part: "Not later than 15 calendar days after service of the notice of punitive action, the employee may file with the board a written answer to the notice, which answer shall be deemed to be a denial of all of the allegations of the notice of punitive action not expressly admitted and a request for hearing or investigation as provided in this article." Section 19576 of that code provides, in part: "Whenever an answer is filed by an employee who has been suspended without pay for 10 days or less the board or its authorized representative shall make an investigation with or without a hearing as it deems necessary." Section 19578 of that code provides, in part: "Whenever an answer is filed to a punitive action other than a suspension without pay for 10 days or less, the board or its authorized representative shall within a reasonable time hold a hearing."

The evidence shows that the notices of punitive action were served on appellant, and that copies of the notices were filed with the board, within the time provided by section 19574; and that appellant filed his answers within the time provided by section 19575. Under the provisions of subdivision (d) of section 19574, appellant's answers were, in effect, appeals from the punitive action (of the appointing power) as recited in the notices. Sections 19570 to 19588 of the Government Code, which pertain to disciplinary proceedings against civil service employees of the state, do not provide, however, that an answer to a notice of disciplinary action stays further action against the employee, upon subsequent violations of the order involved, until the validity of the order is determined on the appeal. The board was not required to grant a hearing with respect to appellant's answers to the notices of suspension. Section 19576 of the Government Code provides, as above shown, that when "an answer is filed by an employee who has been suspended without pay for ten days or less the board shall make an investigation with or without a hearing as it deems necessary . . . ." None of the suspensions, involved herein, was for a time in excess of 10 days. It appears, however, that prior to the time appellant answered the notice of

dismissal the board had set the three suspension matters for hearing. It appears further that, at appellant's request, the hearing with respect to his answer to the notice of dismissal was consolidated with the hearing with respect to his answers to the notices of suspension. Appellant was afforded due process of law.

█ Appellant contends that the decision of the board is based on findings which are not supported by substantial evidence. The findings, so referred to, are Finding IV and part of Finding VII. Finding IV is as follows: ''That it has been the experience of said department, in the processing and examining of applicants for drivers' licenses, that the effective and efficient discharge of the duties described in Paragraph III of this decision by said drivers' license examiners is materially aided when said drivers' license examiners are readily distinguishable by applicants for said licenses; that there have been many instances where said drivers' license examiners have been mistaken for applicants and members of the general public by persons seeking information or waiting to be examined for said licenses; that the work of said drivers' license examiners has been hampered by their not being readily and easily identifiable; that the efficient discharge of the duties imposed upon the department by law have been hampered by the examiners not being readily identifiable as such by applicants for licenses and by other members of the public.'' Said part of Finding VII is as follows: '' [T]hat the uniform so specified tends to make the drivers' license examiners readily and easily identifiable and to distinguish them from the general public.'' Appellant argues that the evidence showed that there were few cases of mistaken identity, that the validity of those cases was doubtful, and that the designated clothing was not sufficiently distinctive to identify examiners. The credibility of the witnesses and the weight of the evidence were matters to be determined by the board. The questions as to the experience of the department in matters regarding the identification of examiners, and the question as to the distinctive character of the designated clothing, were questions of fact for the determination of the board. The findings were supported by substantial evidence. █ In *Shepherd* v. *State Personnel Board*, 48 Cal.2d 41 [307 P.2d 4], it was said, at page 46: ''[T]he factual determinations of a statewide administrative agency which derives adjudicating power from the Constitution are not subject to re-examination in a trial

de novo but are to be upheld by a reviewing court if they are supported by substantial evidence."

■ Appellant contends that the evidence does not support the finding that the actions and conduct of appellant, as specified in the decision, constitute insubordination, wilful disobedience, and other failure of good behavior and acts during duty hours which are incompatible with and inimical to the public service. The questions as to insubordination, disobedience, and other behavior were questions of fact for the determination of the administrative board. The finding was supported by substantial evidence.

■ Appellant also contends that the board inflicted four penalties for a single offense, and that such action establishes that the board was unfair. The evidence shows that on four different occasions, when appellant reported for duty, he refused to comply with the regulation. His conduct constituted four violations and indicated persistent defiance of authority.

The judgment is affirmed.

Vallée, J., concurred.

SHINN, P. J.—I concur. Petitioner's conduct was captious and constituted insubordination. He suffered no loss of compensation and no detriment. While he was wearing his uniform he was not wearing out his blue suit.

A petition for a rehearing was denied July 14, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1958.