168 Cal.App.2d 543 (1959)
JOHN A. WALLACE, Appellant,
v.
STATE PERSONNEL BOARD et al., Respondents.
Civ. No. 9447. 
California Court of Appeals. Third Dist. 
Mar. 9, 1959.
 Frank G. Finnegan for Appellant.
 Edmund G. Brown, Attorney General, Willard A. Shank, Deputy Attorney General, Robert E. Reed and John B. Matheny for Respondents.
 PEEK, J.
 This is an appeal by petitioner Wallace from a judgment denying his petition for a writ of mandate whereby he sought to annul an order of the State Personnel Board, referred to herein as the Board, and be restored to his former civil service position with the State of California.
 From 1949 until he was discharged in 1955, petitioner had been a permanent civil service employee of the Division of Architecture of the Department of Public Works of the State of California, which we shall refer to as the Department, and since 1951 had been employed in the capacity of senior electrical engineer assigned to the Sacramento office of the Department. While at Sacramento his duties, which required substantial travel of from two to four thousand miles per month, included inspecting electrical installations in state construction projects, interpreting plans and specifications and clarifying misunderstandings relative thereto, inspecting installations with respect to whether or not the work was proceeding according to plan, rendering decisions as to intent *545 of design, making final inspections and preparing all necessary reports relative thereto.
 On August 1, 1955, petitioner was transferred from Sacramento to the Los Angeles office where he was assigned similar work. Approximately two weeks after his assumption of duties in that office he began to feel ill. This he described as extreme depression, severe headaches, fatigue, muscle tension, insomnia, loss of weight, and mental confusion. This condition became progressively worse, and on August 29, after completing an assignment at Bishop, California, he returned to Sacramento to consult his family physician, Dr. James D. Coyle. Following his examination of petitioner, Dr. Coyle determined that he was suffering from a complete physical and emotional collapse. He prescribed medication and complete rest. Petitioner thereupon requested sick leave for the month of October. His request stated he was suffering from "complete physical and emotional collapse." Attached to said request was a certificate from Dr. Coyle stating: "My present diagnosis, well verified, is Myocardial Strain, aggravated by a severe emotional disturbance. I have advised him that he cannot return to work at least until 11-15-55, and probably not at that time." The department referred his request to Dr. Norris Jones, the medical officer for the Board, who in turn ordered an independent medical examination of petitioner by Dr. Herbert W. Jenkins. Dr. Jenkins concluded his report as follows: "On the basis of his statements and my examination, I do not believe there is any physical reason for his not returning to work. He intimated that he might prefer to take a demotion if he could continue to live in this area. He apparently would be incapacitated by symptoms of nervous origin if he were forced to move to the Los Angeles Area." On the basis of Dr. Jenkins' report, the Department, on November 29, 1955, disapproved petitioner's request for sick leave in its entirety and ordered him to return to work in Los Angeles, stating that should he refuse to do so his services would be terminated by reason of the automatic resignation provisions contained in Government Code, section 19503. Thereafter petitioner filed a further request for sick leave for the month of November which likewise was denied as was his request for the month of December. The amount of his accumulated sick leave is not questioned. On December 10 petitioner appealed to the Board from denials of his applications for sick leave and also appealed from the order of the *546 Department construing his continued absence to be an automatic resignation under the previously mentioned code section.
 On March 9 the Board conducted a hearing and thereafter, on June 4, 1956, sustained the action of the Department. Petitioner's request for a rehearing was denied and shortly thereafter he filed the present proceeding in the Superior Court of Sacramento County. The court found in favor of respondents and the present appeal followed.
 [1a] Petitioner's first contention relates to the specific finding of the trial court "that petitioner as an employee of the State of California was required, pursuant to section 18100 of the Government Code, to submit satisfactory proof of the necessity for sick leave, and that pursuant to Section 502 of the Personnel Transactions Manual, adopted by the State Personnel Board, an employee must be physically incapacitated if his request for absence is based upon an emotional disturbance."
 In accordance with article XXIV, section 4, of the Constitution, the Legislature, by Government Code, section 18100, has provided for sick leave credits for all civil service personnel upon the "submission of satisfactory proof of the necessity" therefor, and the Board, pursuant to the rulemaking power granted by the Constitution, has, by section 401 of article 18 of the Administrative Code, defined sick leave to be "... the absence from duty of an employee because of his illness or injury, his exposure to contagious disease, his attendance upon a member of his immediate family who is seriously ill and requires the care or attendance of the employee, or death in the immediate family of the employee. 'Member of his immediate family' means the mother, father, husband, wife, son, daughter, brother, or sister of the employee, or any person living in the immediate household of the employee."
 The Board, in addition, by rule 406, has provided that "the appointing power shall approve sick leave only after having ascertained that the absence was for an authorized reason. He may require the employee to submit substantiating evidence including, but not limited to, a physician's certificate. If the appointing power does not consider the evidence adequate, he shall disapprove the request for sick leave." The above- mentioned provisions are the only ones pertinent to questions raised by petitioner that are to be found in the Constitution, legislative enactments or administrative rules. Section 502, referred to in the findings of the court, has never *547 been adopted as a rule by the Personnel Board and hence can be considered as nothing more than an administrative directive for the guidance of department heads to assist them in the maintenance of uniformity in the determination of the availability of sick leave to state employees.
 In their brief respondents admit said section 502 "has no formal status in law but is a source of administrative interpretation of the laws and rules for which the State Personnel Board has administrative responsibility." But respondents then contend that by the same token said section is entitled to great weight.
 [2] Although the construction placed upon a statute by an administrative agency is entitled to said great weight, nevertheless neither an administrative officer nor an agency may "make a rule or regulation that alters or enlarges the terms of a legislative enactment. [Citations.] [3] Moreover, an erroneous administrative construction does not govern the interpretation of a statute, ..." (Whitcomb Hotel, Inc. v. California Emp. Com., 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) [4] It is well established that an administrative directive such as is embodied in section 502 does not have the force of law and hence may not be asserted as a standard for the conduct of the agency if the assertion would in any way effect a change in the meaning of section 401 of the Administrative Code. (Conroy v. Wolff, 34 Cal.2d 745 [214 P.2d 529].) [1b] If, as was held in Nelson v. Dean, 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467], section 151 of the 1937 Civil Service Act (now 18100 of the Government Code) does not limit sick leave to physical illness, then it follows that the administrative directive embodied in section 502 of the Transactions Manual cannot be used to so restrict the purpose and intent expressed in section 401 of the Administrative Code or 18100 of the Government Code. If the provisions of the Transactions Manual may not be so used, then it also follows that the provisions of section 401 of the Administrative Code, which are clear and unambiguous, must be given their obvious meaning that illness may be mental as well as physical.
 [5] If as we have concluded, it was not necessary under the applicable statutes and rules that an employee suffer such a mental collapse as resulted in physical incapacity before becoming entitled to sick leave, then the court and the Board erred in failing to consider the substantial evidence to this effect which was introduced by petitioner. Certainly this must be true since according to the kind of work to be done *548 one may be as incapacitated from performing his duties by reason of mental illness as one also may be incapacitated by reason of purely physical illness.
 From examination of the transcript it is quite apparent that the conclusion of the court and the Board was predicated upon the necessity of a showing of physical inability to do the job, and that any question of inability to perform the services demanded by the employment by reason of emotional disturbance was wholly outside of the issues.
 The record is replete with instances which point up this conclusion. We refer to the comments by the court in its findings relative to the necessity of physical illness; the colloquies between counsel for the Board and the medical witnesses relative to the lack of objective symptoms indicating physical illness; the testimony of the physician appointed by the Board that he was not asked "to evaluate his nervous symptoms in connection with his job. I was asked to evaluate his physical capacity for work"; and the testimony of Mr. Hunter (acting for the Department) that he ignored not only Dr. Coyle's report but also ignored the concluding sentence of Dr. Jenkins' report that the petitioner "would be incapacitated by symptoms of nervous origin if he were forced to move to the Los Angeles Area"; and finally the letter of Dr. Kelley, a psychiatrist, in corroboration of the testimony of Dr. Coyle.
 It necessarily follows that an improper standard was applied for the purpose of determining sick leave, and that the court and the Board, in the application of such standard, completely ignored the substantial evidence of mental illness introduced by the petitioner. The result was an unfair hearing.
 The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.
 Van Dyke, P. J., and Schottky, J., concurred.