[Civ. No. 22359.   First Dist., Div. Three.   July 26, 1966.]

JAMES A. FORSTNER, Plaintiff and Respondent, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants.

---

*Assigned by the Chairman of the Judicial Council.

Thomas M. O'Connor, City Attorney, and Paul J. DiNoia, Deputy City Attorney, for Defendants and Appellants.

Marshall W. Krause and Robert Seligson for Plaintiff and Respondent.

DEVINE, J.—The principal question is whether there was reasonable cause for the dismissal of respondent from his position as a permanent civil service employee, a probation officer of the juvenile court. The cause for dismissal was his refusal to shave his beard on order of the chief probation officer. The chief probation officer, acting as hearing officer, decided that the charge of insubordination was sustained by the evidence. On appeal to the Civil Service Commission, the decision was upheld. The superior court granted writ of mandate restoring respondent's position and directing payment of back salary.

The charge against respondent was stated in a letter to him from the chief probation officer as "insubordination in that you refuse to comply with my order to shave your beard, which you grew while on vacation at the end of your probationary period . . . your wearing a beard is inimical to your effectiveness as a Probation Officer in that it tends to identify you with 'beaktnikism', which stands for attitudes incompatible with your assignment as a Probation Officer."

There was no written rule relating to personal appearance of probation officers, but the chief probation officer, when called as an adverse witness, testified that the "unwritten standards for probation officers are that they will appear in dress no different than that which would be expected of the average middle-class white collar business and professional men in San Francisco," and that a "beard is not yet an accepted middle-class white collar business, industrial or professional employee's accepted item of appearance" but that a "mustache is an accepted appendage."

### The Evidence

#### 1. *The beard*

Respondent, who was 38 at the time of the hearings, had worn a beard at various times, commencing with a period

when he was in the air force. In September 1961, while he was group counselor at juvenile court, respondent grew a beard on vacation, which he continued to wear. Although respondent's superiors were aware of the beard, respondent was never ordered to shave. In December 1961, while bearded, respondent took and passed a written examination for civil service promotion to probation officer.

Sometime prior to taking the oral examination, respondent shaved off his beard. He testified that he shaved at this time because he thought the oral examining board might possibly be prejudiced against him because he wore a beard. He testified that he had worn a beard in an oral examination for a similar position in another county and had not been successful in that examination, that the persons who were to sit on the oral examining board in February 1962, would not be from the San Francisco Juvenile Hall and would not be acquainted with him as an individual, that superficial appearance can count highly in such examinations, that several friends had advised him to shave before taking the examination, and that although he personally felt that his wearing a beard had nothing to do with his qualifications as a probation officer, he did not want to jeopardize his chance for advancement by opening the way to prejudicial bias against him because of his beard.

Respondent was successful in the oral examination. He continued in his position as group counselor until November, 1962, when he was appointed temporary probation officer. During this period he did not have a beard. In March 1963, he received a permanent appointment to the position of probation officer, subject to a six-month probationary period. During the probationary period, from March to September 1963, respondent did not wear a beard. Thus, between the time just prior to the oral examination in February 1962, and the end of his probationary period in September 1963, respondent did not have a beard. He testified that between those dates he had no more than a few days at a time to go out in the woods hunting, that he usually grows a beard while out in the woods, that a beard does not look very handsome while it is in the growing process, and that he had no chance between those dates to get away for the several weeks necessary to grow a beard to the point where it is conducive to good public appearance.

At the end of his six-month probationary period in September 1963, respondent took a two-week vacation, during which he grew a beard. When he returned to work, he continued to wear the beard. Upon his return he continued to work as a

probation officer, but in a different division under a different supervisor, Warren Cain, who had never worked with respondent before. Mr. Cain informed respondent when he reported for duty that his beard would detract from his effectiveness as a probation officer and would identify him as a beatnik. Cain requested respondent to shave. Respondent refused, and the matter was carried to Thomas Strycula, the chief probation officer. Subsequently, Mr. Strycula himself ordered respondent to shave, and the respondent's refusal initiated the proceedings described above.

The evidence is that the beard was at no time unkempt, but was always kept neat and trim.

2. *Performance of duties*

The evidence is without contradiction (much of it having been given by witnesses who found fault with the wearing of the beard) that respondent's performance of his work was excellent. He had never disobeyed an order, except the one to remove his beard. His ratings during his probationary period were uniformly high. During his employment as counselor, when he wore a beard, his work was described as excellent by the senior counselor. Sometimes boys would make remarks about the beard behind respondent's back. A supervising counselor conceded that they would take enjoyment from ridiculing of counselors to the extent that they could get away with it, but testified that "the more you give them to mimic, the worse it is." A counselor has to do mainly with the physical care of children who are in custody; a probation officer calls at homes, agencies, schools, appears in court, and gives counsel.

3. *Opinions of witnesses*

The testimony of one of the witnesses, Mr. Russ, the night superintendent at the juvenile hall, consisted in large part of the fact that he had advised respondent not to wear the beard. His testimony also includes the bare statement that he does not feel that beards are acceptable as a standard for probation officers. His conclusion is unsupported by any reasons. As to the advice he gave respondent, he admitted that this was for the sole reason that he thought respondent would have a better chance of passing the oral examination without a beard. In fact, the advice was to remove the mustache, too. (Other probation officers do wear mustaches and no one has raised objection to this.)

Mr. Cain testified that in his opinion a beard detracts from

the ability to "sell good living." He conceded that he had no personal experience which would indicate that beards are detrimental to probation work and that his opinion was a "qualified guess." He was of the opinion that other professional people working closely with disturbed persons, such as social workers or psychiatrists, could wear beards. He thought that a certain segment of the children think that a person wearing a beard is a beatnik, and that he doesn't believe in rules. His opinion, however, as taken in the context, seems to be related to first impressions of children, parents and other persons coming into contact with the probation officer. Whether children who had actually been counseled or directed by respondent had ever regarded him as lacking in judgment or authority or industry does not appear by the slightest bit of evidence.

Tully McCrea, Western Director of the National Council on Crime and Delinquency, an author of guides for juvenile court judges, and a participant in various institutes for such judges and their staffs, testified that generally a youngster grows to like his probation officer and to identify with him, and that he should be provided with one who is not out of the ordinary. He believed that a probation officer would be less effective if he wore a beard. He, too, could offer no evidence resulting from experience. Far from concluding that a beard means a beatnik, he testified that a few children might be drastically harmed by the appearance of a beard in that it would present to these children a "Jehovah idea" of a brutal father even though a child's father may not have had a beard at all. Here, again, the testimony was not backed by a factual presentation. There was a brief reference to Freud, which was, however, virtually withdrawn.

Miss Cassedy, a probation officer, testified that because a probation officer is "charged with the responsibility for correcting the attitudes and the behavior of deviant members of society" it is necessary for him "to be himself a very conservative individual who doesn't do anything in dress or behavior that is extreme in any respect."

Mr. Chay, Director of Log Cabin Ranch, a place of rehabilitation for delinquent minors, wore a full-blown beard. He testified, however, that this was acceptable to boys in the country, but that if he were a probation officer he would not wear a beard.

Mr. Strycula testified that a probation officer cannot be "offbeat"; that the most important effect of the beard is the division in the department about it; that beards are controversial and that a probation officer should not be in a contro-

versial position because he is too important in the lives of young people and their parents; and that he could not take the chance of learning by experience how respondent would work out as a bearded probation officer.

When we turn to the evidence produced by respondent, we note that it does not consist merely of opposing deductions made by witnesses of contrary views to those advanced by appellants' witnesses. It is of different kind. It consists of evidence drawn from experience.

The only testimony which had to do with the actual, as distinguished from supposed, effect of respondent's beard came from Mr. Dutton, a probation officer working with the boy division. The testimony was that a great many of the boys who were probationers under Forstner had inquired about him and said that they "don't see why a beard would make any difference." (Mr. Dutton himself knew of no reason why a beard would affect the ability of a probation officer.)

Respondent presented testimony of bearded professional persons (a lawyer, a psychiatrist, an architect, a psychiatric social worker at Children's Hospital who counsels children who are on probation, and a teacher at Lowell High School) who testified that their beards did not detract from, but increased, their effectiveness.

To the testimony of actual experience there must be added the facts that Mr. Brugnara, a counselor who was bearded, had been assigned to a difficult cottage of disturbed boys; that Mr. Chay wore a beard; and that respondent himself as counselor was bearded and had as high a rating as any known to his supervising counselor.

It appears from the above that evidence of actual results is quite available.

### Applicable Principles of Law

█ 1. Section 154 of the Charter of the City and County of San Francisco provides that no permanent employee shall be discharged "except for cause, upon written charges and after an opportunity to be heard in his own defense." "For cause" implies the existence of some fact which would constitute reasonable cause for removal. (*Whoriskey* v. *City & County of San Francisco*, 213 Cal.App.2d 400, 403 [28 Cal. Rptr. 833].)

█ 2. In deciding whether there has been reasonable cause, we look not to the findings of the superior court but to the finding of the Civil Service Commission. (*Hingsbergen* v. *State Personnel Board*, 240 Cal.App.2d 914, 916-917 [50

Cal.Rptr. 59]; *Neely* v. *State Personnel Board*, 237 Cal.App. 2d 487, 489 [47 Cal.Rptr. 64]; *Lorimore* v. *State Personnel Board*, 232 Cal.App.2d 183, 186 [42 Cal.Rptr. 640].) The superior court acts in the capacity of a reviewing tribunal, and so do we. Neither court weighs the evidence in this type of case.

■ 3. The factual determinations of the administrative body must be upheld if they are supported by substantial evidence. (*Shepherd* v. *State Personnel Board*, 48 Cal.2d 41, 46 [307 P.2d 4]; *Thompson* v. *City of Long Beach*, 41 Cal.2d 235, 239, 240 [259 P.2d 649]; *Cantrell* v. *Board of Supervisors*, 87 Cal.App.2d 471, 475 [197 P.2d 218].)

■ 4. The essence of the charge against respondent is that of insubordination. ''Insubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed.'' (*Garvin* v. *Chambers*, 195 Cal. 212, 224 [232 P. 696]; *Sheehan* v. *Board of Police Comrs.*, 197 Cal. 70, 78 [239 P. 844].) Unquestionably, such an order must be reasonably related to the duties of the subordinate officer or employee. At times there will be an overlapping of that which is related to official duties and that which is personal to the public servant. ■ In the course of his work, a public officer or employee must yield some of the privileges which are enjoyed by the citizenry at large. (*Fichera* v. *State Personnel Board*, 217 Cal.App.2d 613 [32 Cal.Rptr. 159]; *Gilmore* v. *State Personnel Board*, 161 Cal.App.2d 439 [326 P.2d 874]; *Christal* v. *Police Com.*, 33 Cal.App.2d 564, 569 [92 P.2d 416].) But the subordination of common personal privileges is exacted only in reference to official duty.

■ Section 1094.5 of the Code of Civil Procedure is applicable. We reject appellants' contention that the test is not related to the judicial process but to the legislative process, and that, therefore, the scope of review is the limited one which applies to quasi-legislative functions, as in the leading case cited by appellants, *Pitts* v. *Perluss*, 58 Cal.2d 824, 834, 835 [27 Cal.Rptr. 19, 377 P.2d 83] (formulation of tests by Director of Department of Employment to prevent substantial adverse selection by private insurance companies in selecting risks for unemployment compensation disability insurance).

■ A legislative act predetermines what the law shall be for the regulation of future cases falling under its provisions, but a judicial act is a determination of what the law is in relation to some existing thing done or happened. (*City Council* v. *Superior Court*, 179 Cal.App.2d 389, 393 [3 Cal.Rptr.

796].) There was no rule against wearing of beards. The order given to respondent was referred to in the charging letter by Mr. Strycula as "my order." It was directed to respondent alone. If the test were that which applies to the legislative process, a judicial type of hearing would not have been necessary. (*City Council* v. *Superior Court, supra*, p. 393.)

*Decision and Reasons for It*

■ We conclude that there is not sufficient evidence to support the charge. Our reasons are:

1. The opinions given by appellants' witnesses were not based on any experience or record whatever of the performance of a bearded probation officer. Results rather than hypotheses are the prime factor. (See *Board of Trustees* v. *Owens*, 206 Cal.App.2d 147, 157 [23 Cal.Rptr. 710].) In the cases cited in appellants' briefs, there was factual material rather than mere hypothesis to sustain the dismissal of employees. Thus, in *Gilmore* v. *State Personnel Board, supra*, 161 Cal.App.2d 439, a rule requiring drivers' license examiners to wear uniforms was sustained as reasonably related to the duties of the department, on evidence that on several occasions prior to the order an applicant had entered the car of another applicant and the two had gone several blocks before either of them became aware that the other was not an examiner; and that it is less objectionable to husbands and fathers if their wives and daughters take driving tests with a uniformed examiner than with a nonuniformed examiner. In *Griggs* v. *Board of Trustees*, 61 Cal.2d 93 [37 Cal.Rptr. 194, 389 P.2d 722], a teacher had shown lack of self-control in the presence of pupils, lack of courtesy, and poor judgment in handling pupil problems. In *Hayman* v. *City of Los Angeles*, 17 Cal. App.2d 674 [62 P.2d 1047], an employee had been stirring up dissension among his fellows. But it is argued by appellants that they could not present evidence of the lack of effectiveness of a bearded probation officer because no other probation officer in San Francisco or elsewhere is known to wear a beard; and that they could not take the chance of experimenting because of the seriousness of the work entrusted to respondent. We do not find evidence of extraordinary urgency. Respondent had worn a beard while he was a counselor and his rating was excellent. Although his duties as probation officer were greater, there was not a demonstration of immediate danger to anyone. The director of the Log Cabin Ranch had long worn a beard and did so at the time of the hearing, where

he appeared as a witness. It would seem that if persons coming into contact with the probation officer had experienced unfavorable results by reason of the beard, evidence thereof could have been gathered and produced.

2. A beard is a very personal embellishment. Unlike items of dress, it cannot be donned and doffed. An intelligent wearer of a beard no doubt regards it as enhancing his appearance. By some persons it may be flaunted as a symbol of unruliness. But there is no substantial evidence to show that persons dealing with a bearded probation officer, despite his skill in dealing with their problems, would regard him as rebellious or eccentric. It is to be observed that although the charge was that the beard tended to identify respondent with beatnikism,* part of the testimony was poles apart from this charge, that is, that the beard would give the "Jehovah image" of a stern father.

The subject of neatness enters here. An unkempt beard, like uncut hair, would offend against the neatness which is expected of public officers. The evidence is that respondent's beard has always been well trimmed. Perhaps it is something like the excrescence which Shakespeare attributes to the justice in the fifth of the seven ages of man, the "beard of formal cut." (As You Like It, Act II.)

3. Finally, we turn to a pragmatic observation. For more than two years since the judgment in the superior court, respondent, bearded, has been working as a probation officer. Surely, in this time, if his work has suffered or his effectiveness has been diminished because of the beard, evidence and not mere hypotheses will be available. It is true that to bring the matter to final judgment would take time, but not very long if urgency were demonstrated. We do not intend to announce it as a rule of law that probation officers may wear beards, even trim and formal ones, but merely to hold that sufficient evidence was not presented at the particular hearing, the record of which is before us, to justify dismissal of respondent from his position.

### Clean Hands

█ In the superior court hearing appellants made the point that respondent did not come into court with clean hands because he had appeared clean shaven before the board for oral examination and had created a false impression. (This

---

*A "beatnik" is defined in Webster's Third New International Dictionary as "a person having a predilection for unconventional behavior and dress and a preoccupation with exotic philosophizing and self-expression."

was not a charge before the hearing officer.) The court found against appellants, holding that respondent had no reason to believe a beard would be unacceptable because of the lack of rules on the subject. The finding is reasonable and cannot be disturbed. Because the "clean hands" subject was presented to the court as a defense over and above what was submitted before the hearing officer and the Civil Service Commission, the court's finding and conclusion of law on this subject is to be given the usual favorable consideration on appeal.

### *Salary*

Appellants contend that they were given no chance to contest the facts in regard to back salary. The court accepted from respondent a written account of his lost wages. The account was admitted without objection. The court invited appellants to submit a counterdeclaration but counsel replied that there was none. Appellants made no motion for new trial, by which any error in the computation might have been corrected.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.