[Civ. No. 25258. First Dist., Div. Two. Oct. 22, 1968.]

E. D. PROCTOR et al., Plaintiffs and Respondents, v. SAN FRANCISCO PORT AUTHORITY, Defendant and Appellant.

[Civ. No. 25259. First Dist., Div. Two. Oct. 22, 1968.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION et al., Plaintiffs and Respondents, v. SAN FRANCISCO PORT AUTHORITY, Defendant and Appellant.

(Consolidated Cases.)

Thomas C. Lynch, Attorney General, and Miriam E. Wolff, Deputy Attorney General, for Defendant and Appellant.

Charles P. Scully, Donald C. Carroll, John B. Salazar and Wilmer W. Morse for Plaintiffs and Respondents.

TAYLOR, J.—The only question presented by these consolidated appeals[1] is whether certain actions of the San Fran-

[1] No. 25258 was a representative suit for declaratory relief filed by certain members of the United Brotherhood of Carpenters and Joiners, employed by the Port Authority, and their union representative on behalf of other members employed by the Port Authority; No. 25259 was a representative action for declaratory relief and a writ of mandate filed by the California State Employees Association, and certain of its members on behalf of other laborers, workmen and mechanics employed on an hourly basis by the Port Authority. Named as defendants were the Port Authority and its members, the State Personnel Board, and the Governor, Controller, and Treasurer of the state. Only the Port Authority appeals in both actions. Because of the identity of the issues raised, the two matters were consolidated for trial. As the relief sought varied, separate judgments were entered. The appeal in No. 25258 is from the judgment in declaratory relief in favor of respondents; the appeal in No. 25259 is from the judgment in favor of respondents and the order granting a writ of mandate.

cisco Port Authority (hereafter Port Authority) setting wage rates for laborers, workmen and mechanics on the basis of straight time, overtime and holiday time, established the "salary range" required by Harbors and Navigations Code section 1705.5. The trial court found that Harbors and Navigation Code section 1705.5 construed with the Government Code sections hereafter mentioned requires salary ranges, as distinguished from flat rates, for normal hours of work; that prior to the actions in question the Port Authority had established ranges with two five-cent steps superimposed upon prevailing rates; that such ranges and steps based on prevailing rates have never been abolished; that the effect of its actions was to adjust the minimum of the existing ranges from previous prevailing rates to the current rates with the five-cent steps intact and held that the employees affected be paid in accordance with the ranges from time to time in effect. The Port Authority contends that its actions merely fixed a flat rate for normal hours of work and as such constituted a proper exercise of its administrative discretion and, if not, in the alternative, that the trial court erred, in any event, by ordering the payment of specific amounts in accordance with the ranges existing prior to April 1966 instead of merely directing the Port Authority to adopt a range in conformity with the statute.

The facts are not in dispute. All of the individual plaintiffs and the persons similarly situated on whose behalf the actions were filed, were employed on an hourly basis by the Port Authority. Before September 11, 1957, the State Personnel Board established and adjusted the hourly salary ranges for all laborers, workmen and mechanics employed by the Port Authority. These ranges consisted of minimum and maximum ranges ten cents apart and an intermediate rate midway between the two. After the authority to establish these ranges was transferred to the Port Authority by the 1957 amendment of section 1705.5 of the Harbors and Navigation Code (Stats. 1957, ch. 2242), the Port Authority continued to establish and adjust the salary ranges for the same classes of employees with the same spread and steps. Thus, prior to April 13, 1966, all such employees were paid in accordance with these salary ranges consisting of a base rate, intermediate steps of five cents per hour for merit increases, and at ten cents per hour maximum overscale, for their respective classifications.

On April 13, 1966, the Port Authority adopted Resolution No. 433, which declared that the Port Authority endeavored

to set salaries at rates comparable with and no less than that paid in private industry in the San Francisco area; that the payment of so-called merit increases, as provided for in Government Code section 18854 and the rules of the personnel board, when applied to the salaries set by the Port Authority, resulted in a payment of higher wages to the Port Authority's employees than employees in comparable private industry; and that on the basis of these considerations, the Port Authority in 1965 intended to stop the payment of the merit increases whenever new wage rates were established. Accordingly, Resolution No. 433 declared the Port Authority's intention to delete all merit increases from its resolutions increasing wages from and after May 1, 1965, and alternatively, from and after April 13, 1966, in the event that prior resolutions had failed to do so. Accordingly, some of the individual plaintiffs were paid merit increases up to and including April 13, 1966.

On July 13, 1966, the Port Authority adopted Resolution No. 491 with respect to all classes represented in these actions. This resolution fixed the work week for each job classification, specified a flat hourly sum as the rate for normal hours of work (8 hours of work Monday through Friday) and a different or higher sum for overtime work (in excess of 8 hours), or for work on Saturday, Sunday or holidays. After April 1966, the Port Authority paid no merit increases. Since April 1966, the prevailing rates of compensation for comparable service in other public employment and in private employment in San Francisco were the same as the minimum set for the same classes by the Port Authority's flat hourly rate procedure. Therefore, since April 13, 1966, the Port Authority has failed to pay the employees here involved for work performed during normal hours of work at any rate other than the minimums of the salary ranges for their respective classes as established and adjusted.

The trial court found that Resolution No. 433 and all subsequent wage resolutions specifying a flat hourly rate did not conform to the specific mandate of Harbors and Navigation Code section 1705.5 requiring the Port Authority to "establish and adjust salary ranges." The trial court concluded that Resolution No. 433 was null and void as a matter of law. The trial court further found that the effect of Resolution No. 491 was to adjust salary ranges and to fix the flat hourly rate therein provided for normal hours of work as the minimum

of the salary range to which rate the said five and ten-cent steps are added to make a complete range. Accordingly, the trial court ordered the Port Authority to pay to the individual plaintiffs and all othes similarly situated the merit increases to which they were entitled under the ranges existing on April 13, 1966, and as so adjusted.

The parties agree that the only question presented is one of law. Harbors and Navigation Code section 1705.5 provides, so far as pertinent: "Notwithstanding any other provision of law, the authority shall establish and adjust salary ranges for laborers, workmen . . . and mechanics employed by it. In establishing or changing such ranges consideration shall be given to the prevailing rates for comparable service in other public employment and in private business. The authority may make a change in salary range retroactive to the date of application for such change. Such salary ranges may be fixed on an hourly, per diem, or monthly basis or any combination thereof." (Enacted Stats. 1957, ch. 2242.)

The Port Authority contends that the introductory phrase "Notwithstanding any other provision of law," was designed to exclude the operation and application of sections 18852, 18853 et seq. of the Government Code, and grant to the Port Authority complete and full authority to set wage rates for its employees. For the reasons set forth below, we agree with the trial court's conclusion that pursuant to section 1705.5, the Port Authority is required to adopt a salary range as defined by section 18852 of the Government Code, discussed below.

In the first place, the words directing the Port Authority to establish "salary ranges" are clear and certain. Any uncertainty can easily be made certain by reference to a dictionary (*Cozad* v. *Board of Chiropractic Examiners*, 153 Cal.App.2d 249 [314 P.2d 500]). "Salary" is defined as a fixed compensation paid at regular intervals (p. 2003); a "range" is a row, line, sequence or series between limits (p. 1880) (Webster's Third New International Dictionary, Unabridged, 1965.) If the words of a statute given their ordinary and popular significance are reasonably free from ambiguity and uncertainty, a court will look no further to ascertain its meaning (*Alalunga Sport Fishers, Inc.* v. *County of San Diego*, 247 Cal.App.2d 663, 666-667 [55 Cal.Rptr. 875]; Code Civ. Proc., § 1859).

Clearly, the Port Authority's action in establishing a flat fixed hourly wage rate and a separate and distinct

method of compensation for overtime, Saturday, Sunday and holiday time, is not a range. Rather, there is only one flat rate for regular work and for work performed overtime and on weekends and holidays. Compensation for such extra hours has always been treated as a separate and distinct concept (Gov. Code, §§ 18020, 18021, 18021.5). A range necessarily implies a movement from a beginning or minimum rate to a maximum rate for the normal hours of work. The flat hourly rate adopted by the Port Authority allows for no such movement.

It is undisputed that before September 11, 1957 (the effective date of Stats. 1957, ch. 2242), the wage rates for employees of the Port Authority were set by the State Personnel Board pursuant to chapter 4, title 2, division 5, sections 18850 et seq. of the Government Code. The Port Authority concedes that prior to September 11, 1957, the State Personnel Board was bound by section 18852 and the related provisions, but argues that the 1957 transfer gave the Port Authority greater authority than that taken away from the personnel board. This contention is patently without merit and not supported by the legislative history of the 1957 amendment.

In 1956, the State Personnel Board adopted a proposal for the reallocation of permanent positions in craft classes to classes having only a monthly salary range. As this proposal was opposed by the employees of the craft classes employed by the Port Authority, the Port Authority requested the 1957 transfer of wage setting authority, so it could continue to use hourly rates.

As originally introduced, the 1957 amendment contained the language ''Notwithstanding any other provision of law.'' On May 20, 1957, the bill (then Senate Bill 1648) was amended to vest the salary-setting authority in the personnel board upon recommendations to be made by the Port Authority. The personnel board was then required to fix ''. . . minimum and maximum salary limits . . .'' On May 28, 1957, the phrase ''Notwithstanding any other provision of law'' was deleted, but the general plan of the May 20 bill retained by providing that the Port Authority would report its findings to the personnel board which would fix *minimum* and *maximum* salary limits. On June 7, 1957, the bill was again amended to establish the salary-setting power in the Port Authority. The language ''Notwithstanding any other provision of law'' was

reinserted and all further references to the personnel board and the fixing of salary limits deleted to arrive at the language subsequently enacted as the first paragraph of section 1705.5, as quoted above.

Thus, in the course of amending the bill, the Legislature gave the Port Authority the power to set "salary ranges," the identical term used in the Government Code provisions quoted, so far as pertinent below, setting forth the power of the State Personnel Board.[2] The replacement of the terms "minimum and maximum salary limits" by the term "salary ranges" indicates that the Legislature considered the latter to be the more complete term.

█ Statutes dealing with the same subject matter are deemed statutes "in pari materia" and are to be construed together and harmonized whenever possible (*Farmers Ins. Exchange* v. *Geyer*, 247 Cal.App.2d 625, 634-635 [55 Cal.Rptr. 861]; Code Civ. Proc., § 1859). █ Thus, the only purpose of the phrase "Notwithstanding any other provision of law" at the beginning of section 1705.5 is to indicate that despite any other provisions of law relating to the salary range-setting authority for employees of the Port Authority, the power and duty to set these salaries is now vested in the Port Authority.

Furthermore, the very language of the board's Resolution No. 433, referring to Government Code section 18854, recognizes that the Port Authority is bound by this and the related provisions of the Government Code (set forth below, so far as pertinent).[3] The board's resolution expressly refers to its

---

[2]Section 18520. "Unless the context requires otherwise, the definitions hereinafter set forth govern the construction of this part and the rules adopted hereunder."

Section 18521. "'Board' means the agency created by Section 2 of Article XXIV of the Constitution and includes the 'State Personnel Board' provided in Section 2(a) and the 'executing officer' provided in Section 2(c) thereof."

Section 18850. "The board shall establish and adjust salary ranges for each class of position in the state civil service . . ."

Section 18852. "Salary ranges shall consist of minimum and maximum salary limits. *The board shall provide for intermediate steps within such limits to govern the extent of the salary adjustment which an employee may receive at any one time;* provided, that in classes and positions with unusual conditions or hours of work or where necessary to meet prevailing rates and practices for comparable services in other public employment and in private business the board may establish more than one salary range or rate or method of compensation within a class." (Italics added.)

[3]Government Code section 18853. "The minimum and maximum salary limits for laborers, workmen, and mechanics employed on an hourly or per diem basis need not be uniform throughout the State, but the

policy of setting hourly wage rates in accordance with those prevailing in the locality. As the terms and conditions of civil service employment are fixed by statute and not by contract (*Gilmore* v. *Personnel Board,* 161 Cal.App.2d 439, 448 [326 P.2d 874]), strict compliance with the applicable statutes is essential. The Port Authority's adoption of a flat hourly rate for the employees here involved is not only contrary to the mandate of Harbors and Navigation Code section 1705.5 concerning the setting of salary ranges (as defined by Government Code section 18852), but completely ignores the provisions of section 18854 concerning merit adjustments.

The state has proclaimed that all aspects of employment of state employees (including compensation) are to be governed by the state civil service (Const., art. XXIV). The state civil service system consists of general laws administered by the State Personnel Board enacted by the Legislature to govern the employment of all state employees. Section 1705.5 of the Harbors and Navigation Code is an exception to the general laws and in derogation of the sovereignty of the state. ▇ Any statute that grants a special privilege is to be strictly construed against the grantee, particularly where such privilege is one in derogation of the rights of the sovereign (*Aycrigg* v. *United States,* 124 F.Supp. 416; *Eden Memorial Park Assn.* v. *Superior Court,* 189 Cal.App.2d 421 [11 Cal.Rptr. 189]). ▇ When the Legislature enacts an exception to the general rules, the exception must be construed to conform with the general laws and is to be considered repugnant only to the extent stated in the exception (*Ex parte Smith,* 40 Cal.

appointing power shall ascertain and report to the board, as to each such position, the general prevailing rate of such wages in the various localities of the State.

"In fixing such minimum and maximum salary limits within the various localities of the State, the board shall take into account the prevailing rates of wages in the localities in which the employee is to work and other relevant factors, and shall not fix the minimum salary limits below the general prevailing rate so ascertained and reported for the various localities."

Section 18854. "After completion of the first year in a position, each employee shall receive a merit salary adjustment equivalent to one of such intermediate steps during each year when he meets such standards of efficiency as the board by rule shall prescribe."

Section 18856. "Automatic salary adjustments shall be made for employees in the State civil service in accordance with this chapter and board rule adopted pursuant hereto, notwithstanding the power now or hereafter conferred on any officer to fix or approve the fixing of salaries, unless there is not sufficient money available for the purpose in the appropriation from which such salary shall be paid and the Director of Finance shall so certify."

419). The extent of the exception set forth in Harbors and Navigation Code section 1705.5, is that the Port Authority (rather than the State Personnel Board), has the power and duty to set the salary ranges of Port Authority employees. It follows from the above that the trial court correctly concluded that the term "salary range" as used in section 1705.5 of the Harbors and Navigation code must be construed to conform to and be in harmony with the same term as used in the Government Code.

Significantly, for nine years (1957-1966), the Port Authority followed the definition of "salary range" set forth in Government Code sections 18852 and 18853. The contemporaneous construction of a statute by an administrative agency charged with its enforcement will be accorded great weight and courts will not depart therefrom unless the prior construction was clearly erroneous (*Union Oil Co. v. State Board of Equalization*, 60 Cal.2d 441 [34 Cal.Rptr. 872, 386 P.2d 496]). Here, the Port Authority, after nine years of contemporaneous interpretation (impliedly upheld by the Legislature's amendments of other portions of the statute, *Pitts v. Perluss*, 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83]), undertook to suspend it and to adopt a salary procedure contrary to that specified by the statute. Accordingly, the trial court properly concluded that the Port Authority's Resolution 433 constituted an abuse of discretion.

 Finally, the Port Authority argues (in the alternative) that even if its actions constituted an abuse of discretion, the trial court erred by ordering the payment of specific amounts in accordance with the salary ranges including the merit increases, instead of merely directing the adoption of a new range conforming to the statute. There is no merit in this contention. The Port Authority is an administrative agency of special or limited jurisdiction and has no powers except those granted to it by statute (*Conover v. Board of Equalization*, 44 Cal.App.2d 283 [112 P.2d 341]). The power to set salary ranges for its employees delegated by the first paragraph of Harbors and Navigation Code was not a grant of legislative power. If an agency exceeds the limits of its enactment, it is usurping the legislative power, and any rule adopted thereby is invalid (*Wallace v. State Personnel Board*, 168 Cal.App.2d 543 [336 P.2d 223]). As the Port Authority here clearly exceeded its statutory authority and acted contrary to the statutory mandate, the trial court properly concluded that Resolution 433

was void, and directed that all employees affected thereby be restored to their rates of compensation existing prior to the adoption of the void resolution and be paid in accordance with the ranges from time to time in effect. *Raymond* v. *Christian*, 24 Cal.App.2d 92 [74 P.2d 536], relied upon by the Port Authority, is not in point, as that case involved no void actions.

The judgments and orders directing the issuance of a writ of mandate are affirmed.

Shoemaker, P. J., and Agee, J., concurred.

On November 8, 1968, the opinion was modified to read as printed above.