[Civ. No. 29176.  Second Dist., Div. Three.  Apr. 18, 1967.]

PAUL S. FINOT, Plaintiff and Appellant, v. PASADENA CITY BOARD OF EDUCATION et al., Defendants and Respondents.

Mosk & Rudman and Norman G. Rudman for Plaintiff and Appellant.

A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, George W. Wakefield, Assistant County Counsel, and Raymond W. Schneider, Deputy County Counsel, for Defendants and Respondents.

COBEY, J.—This is an appeal from a judgment denying a writ of mandate to appellant under which respondents would have been compelled to rescind their assignment of him to home teaching and to restore him to his former classroom teaching assignment. The basis of the appeal is that such reassignment violated various of appellant's constitutional rights.

Shortly after the commencement of the school year of 1963-1964, appellant, a male teacher, holding permanent tenure, who had been teaching government to high school seniors in the Pasadena city school system for seven years and who was a challenging and effective classroom teacher was transferred by respondent board to home teaching because he insisted on wearing, while teaching, a freshly grown beard.

Appellant's conduct in this respect was in violation of the administrative policy of the principal of the John Muir High School where appellant, while clean-shaven, had been teaching for the last three years. This administrative policy had been initiated by the principal upon his becoming principal on July 1, 1960. Authority to originate this policy had been delegated to the principal by respondents' superintendent. The policy itself represented the principal's interpretation of a rating item in the teacher evaluation form of respondents' Teacher Handbook calling for the practice by teachers, among other things, of the common social amenities, as evidenced by acceptable dress and grooming, and requiring that they be appropriately attired on all occasions and that they set an example of cleanliness, neatness, and good taste.

This interpretation of this rating item was in turn based on a requirement in the Student Handbook at John Muir High School that beards, moustaches, and excessively long hair were not appropriate dress for male students.

In fact, the principal testified that the wearing of beards by male students had been a continuous problem at John Muir High School since he came there as a teacher in 1956. Both he and respondents' superintendent explained that, in their professional judgment as experienced and competent school administrators and teachers in various parts of the country, the appearance of teachers had a definite effect on student dress by way of example and in turn student dress had a definite correlation with student behavior—that is, the well-dressed student generally behaved equally well. Their concern was that appellant's beard might attract undue student attention and thereby interfere with the process of educating them and, more specifically, would make the prohibition against male students wearing beards more difficult to enforce.

Respondents' superintendent and principal further explained that maintaining good student appearance at John Muir High School was much more of a problem than at the other city high school, Pasadena, because the students at John Muir were a much more metropolitan, cosmopolitan and heterogeneous lot with much greater range and extremes in economic, social, cultural and ethnic backgrounds. In this last respect it was specifically brought out that a larger percentage of male Negro students than other male students, ordinarily want to grow beards and moustaches; that there were many more Negro students at John Muir than Pasadena, both absolutely and proportionately; and that the principal at John Muir therefore feared that if appellant were permitted to wear his beard in his classroom and on the campus, male students would be encouraged by his example to imitate him in violation of the aforementioned student rule to the contrary.

However, the foregoing reasons were not the only reasons for respondents' enforcement of the administrative policy under review. Appellant had promised both respondents' superintendent and the principal at John Muir, as a condition of his being transferred there from Pasadena High School[1] that he would not wear a beard while teaching at John Muir. He had worn a beard, like the one involved here, for most of the school year of 1959-1960 despite his then principal's known dislike of it. Furthermore, in the principal's opinion, he insisted on wearing his beard at John Muir at the start of

---

[1]This was a disciplinary transfer of appellant in that it resulted from a request of his then principal at Pasadena High School, that he be transferred from there.

the 1963-1964 school year in order to create an incident and to force the principal's hand.

Although the evidence is in direct conflict as to whether the freshly grown beard that appellant wore at the start of the school year 1963-1964 was neat and well trimmed, this conflict in evidence is beside the point because respondents concede that their transfer of appellant from classroom teaching to home teaching was occasioned solely by his wearing a beard and not because of its appearance. Consequently, the basis for respondents' action, which is here under review, was that, in the principal's opinion, appellant's wearing of a beard was not acceptable dress and grooming, appropriate attire, or in the good taste required by the aforementioned Teacher Handbook of teachers at the John Muir High School. The cleanliness and neatness of appellant's beard has never been an issue in this proceeding.

Appellant brands his transfer from classroom to home teaching by respondents, because he insisted on wearing a beard while teaching, as unconstitutional action. More specifically, he claims that his right to wear a beard, while teaching, is preserved to him by the privileges and immunities provisions of the United States Constitution, by the First, Fifth, Ninth and Fourteenth Amendments thereto, and by the cognate provisions of our California Constitution;[2] that depriving him of this right without a valid reason or interest therefor and in the manner in which it was done, was a denial to him of his constitutional guarantees against deprivation of his life, liberty or property without due process of law and of the equal protection of the laws; and that he suffered a legally remediable detriment by reason of the aforesaid change in his teaching duties.

Amicus curiae, the American Civil Liberties Union, contends that this change in appellant's teaching duties, because of his insistence on wearing a beard as aforesaid, was arbitrary, capricious and unreasonable and in violation of his aforementioned federal and state constitutional rights under the due process of law clauses. It also suggested that his

---

[2]Appellant's counsel, when asked by the court at oral argument of this appeal to specify which of these constitutional rights respondents had violated by the aforementioned change in teaching assignment, declined to make a choice and indicated that he was leaving this choice to the court.

federal and state constitutional rights to the security of his person were somehow involved.

The trial court did not accept these contentions of appellant and of amicus curiae. It specifically found as follows in its findings of fact:

"That the administrative policy at John Muir High School prohibiting the wearing of beards by teachers is based upon the professional judgment of John A. Venable, Principal at John Muir High School that the wearing of beards by teachers would encourage students to wear beards, would make it difficult to enforce standards of student dress and grooming, and would be a disruptive factor in the educational process. It was, and is the professional judgment of said John A. Venable, as principal at John Muir High School, that the wearing of a beard by a teacher would draw undue attention to said bearded teacher, would cause undue and extraordinary comment thereon, and would be disruptive of the educational program of the school. John A. Venable is qualified by education and experience as a teacher and school administrator and as principal of John Muir High School he is responsible for the supervision and administration of his school. Said John A. Venable is further qualified by experience and education to formulate the administrative policy that teachers at John Muir High School should not be permitted to wear beards. John A. Venable, as principal at John Muir High School has, in fact, had experience with the disciplinary and scholastic problems caused by the wearing of beards by students, and said John A. Venable has actually encountered a student wearing a beard at said school in emulation of petitioner PAUL S. FINOT." (Find. VIII.)

"It is, and was at all times herein involved, the professional judgment of John A. Venable, Principal of John Muir High School, and Robert A. Jenkins, Superintendent of respondent District, that the wearing of a beard by petitioner at John Muir High School is not the practice of a common social amenity and is not acceptable grooming for classroom teachers." (Find. XI.)

Furthermore, in its conclusions of law, it specifically held that respondents' action in changing appellant's teaching assignment, as aforesaid, "was not arbitrary, discriminatory, unreasonable, capricious, nor punitive, and said action does not deny [appellant] liberty or property without due process of law, nor does it deny said [appellant] equal protection of the law" and that such action of respondents "constitutes

the lawful exercise of discretion vested in respondents and that the exercise of said discretion was reasonable'' and that appellant ''has suffered no detriment, injury or damage from the acts of respondents herein.''

The first question presented by this appeal is whether appellant possesses any constitutional right to wear a beard while engaged in classroom teaching at John Muir High School. If he does not, respondents' change in his teaching duties, because he insisted on wearing a beard while so teaching, was plainly privileged. Generally speaking, respondents possessed the power to assign appellant to any teaching duty for which he was qualified and for which he was needed. (Ed. Code, §§ 931, 939, subd. (c) ; *Matthews* v. *Board of Education,* 198 Cal.App.2d 748, 754 [18 Cal.Rptr. 101] ; *Mitchell* v. *Board of Trustees,* 5 Cal.App.2d 64, 69 [42 P.2d 397].) Likewise, the informal, tortuous and delegated manner in which the administrative policy of the principal under attack, originated and was enforced, does not, in itself, on the record before us, constitute sufficient basis for striking down this exercise of a delegated legislative power of the State of California. (*McGrath* v. *Burkhard,* 131 Cal.App.2d 367, 372-373 [280 P.2d 864] ; Cal. Admin. Code, tit. 5, § 16.) Nor do we hold, on the record before us, that respondents' action should be invalidated because it was arbitrary, capricious, unreasonable, in bad faith, and therefore, in this context, an abuse of the statutory discretion delegated to respondents and its agents. (*Dutart* v. *Woodward,* 99 Cal.App. 736, 739-740 [279 P. 493] ; *Aebli* v. *Board of Education,* 62 Cal.App.2d 706, 753-754 [145 P.2d 601] ; *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586, 597 [116 P.2d 593] ; *Board of Education* v. *Swan,* 41 Cal.2d 546, 556 [261 P.2d 261].)

But we believe that, for reasons hereinafter stated, appellant did possess a constitutional right to wear his beard while engaged in classroom teaching at John Muir High School. We do not find such a right, though, in the privileges and immunities provisions of the United States Constitution (art. IV, § 2; Amendment 14) ; and appellant in his briefs has not enlightened us in any manner whatsoever regarding the basis for his claim of constitutional right in this respect.

Likewise, on the record before us, we are not disposed to find that appellant's federal and state constitutional rights, (U. S. Const., Amendment 14, Cal. Const., art. I, § 11) to the equal protection of the laws, have been violated by respondents' action. It is true that notwithstanding the exist-

ence of the aforementioned rule at John Muir High School against male students wearing moustaches, male teachers there were permitted by the principal to wear them, both on the campus and in the classrooms and no one of these teachers was ever compelled to shave off his moustache. Furthermore, the administrative policy of the principal at John Muir High School banning bearded male teachers from its campus did not extend to the other high school of respondent district, Pasadena.

However, in our opinion, both of these discriminatory policies rested on a rational foundation of facts. In this day and age and in this part of the United States the wearing of moustaches by adult males is a much more common and acceptable practice than the wearing of beards is, and the principal of John Muir made clear on the witness stand that if he were confronted by a handlebar moustache on a male faculty member on his campus, his policy and action would be precisely the same as that being attacked here and for exactly the same reason—namely, that it would attract undue attention from the students and would thereby interfere with the process of educating them. Similarly, the difference in the composition of the student body at the two high schools in Pasadena and the variation in the intensity of the desire on the part of their male students to wear beards justifies the difference in the administrative policies of the two principals on the two campuses with respect to male teachers wearing beards. Accordingly, it does not seem to us that appellant has made out on this record a persuasive case for the violation of his constitutional rights under the equal protection of laws provisions of the federal and state Constitutions. But on this point we expressly withhold decision as unnecessary in view of what we later hold herein.

Moreover, we cannot agree with amicus curiae that appellant's right to wear a beard under the already indicated circumstances, is protected by the Fourth Amendment to the United States Constitution or by article I, section 19 of the California Constitution. These protect essentially the right to be secure in one's person and we do not see how wearing a beard is a part of one's personal security. Similarly, we do not concur in appellant's reliance upon the Fifth and Ninth Amendments to the United States Constitution. We doubt the Fifth Amendment's applicability in the context of this case (see 3 Witkin, Summary of Cal. Law (1960) 1839-1840) and the unnamed rights retained by the people under the Ninth

Amendment generally have received little, if any, specification *as such* by the United States Supreme Court (see *Griswold* v. *Connecticut*, 381 U.S. 479, 480, 491-493 [14 L.Ed.2d 510, 512, 519-520, 85 S.Ct. 1678]). But, for reasons which will be apparent later, we deem it unnecessary to decide whether appellant's right to wear a beard while engaged in classroom teaching at John Muir High School is protected by the Fourth. Fifth and Ninth Amendments to the United States Constitution and by the corresponding provisions of the California Constitution such as article I, section 23.

Putting aside for the moment the free speech provisions of the United States and California Constitutions (1st Amendment; art. I, § 9), there is left then, in our view, as the only other possible constitutional basis for appellant's right to wear a beard under the circumstances just stated, the due process clauses which are found in substantially identical language in the Fourteenth Amendment to the United States Constitution and in article I, section 13 of the California Constitution.[3] This constitutional restriction upon the governmental power of the State of California and its agents including respondents, prohibits the deprivation of life, liberty or property of any person without due process of law. Clearly we are not concerned here with any deprivation of life and while appellant's beard may constitute a kind of property it is the wearing of it that is at issue here, and that, to us, seems to be a matter of liberty rather than of property.

The word ''liberty'' as used in the Fourteenth Amendment, has been broadly construed for many years and embraces many different kinds of activities. In *Meyer* v. *Nebraska*, 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446], Mr. Justice McReyonlds, speaking for the court, had this to say as to its meaning: ''. . . Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and, generally, to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. [Citations.]''

[3]The California Constitution also contains article I, section I of its ''Declaration of Rights,'' which reads as follows: ''All men are by nature free and independent, and have *certain inalienable rights,* among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property; and pursuing and obtaining safety and happiness.'' (Italics added.)

These personal liberties protected by the due process clause of the Fourteenth Amendment include both fundamental political rights, closely associated with the First Amendment right of free speech, such as the right to engage in political activities (*Fort* v. *Civil Service Com.*, 61 Cal.2d 331, 334-335 [38 Cal.Rptr. 625, 392 P.2d 385]),[4] and the right to associate for the advancement of beliefs and ideas, whether they be political, economic, religious or cultural (*N.A.A.C.P.* v. *Alabama*, 357 U.S. 449, 460 [2 L.Ed.2d 1488, 1498, 78 S.Ct. 1163]; *N.A.A. C.P.* v. *Button*, 371 U.S. 415, 430-431 [9 L.Ed.2d 405, 416-417, 83 S.Ct. 328]), and fundamental rights of a more private and individual nature, such as the above mentioned right to marry the person of one's choice (*Perez* v. *Sharp*, 32 Cal.2d 711, 714-715 [198 .2d 17]), the right of parents to educate their children in private schools as opposed to public ones (*Pierce* v. *Society of Sisters*, 268 U.S. 510, 534, 535 [69 L.Ed. 1070, 1077, 1078, 45 S.Ct. 571, 39 A.L.R. 468]), and to see that their children are instructed in a foreign language (*Meyer* v. *Nebraska, supra,* p. 400), the aforementioned right to engage in an occupation (*Schware* v. *Board of Bar Examiners*, 353 U.S. 232, 238-239 [1 L.Ed.2d 796, 801-802, 77 S.Ct. 752, 64 A.L.R. 2d 288]) and, presumably, the right to travel (*Kent* v. *Dulles*, 357 U.S. 116, 125-127 [2 L.Ed.2d 1204, 1209-1211, 78 S.Ct. 1113]; *Aptheker* v. *Secretary of State*, 378 U.S. 500, 505-506 [12 L.Ed.2d 992, 996-998, 84 S.Ct. 1659]).

In the light of this broad meaning of the word "liberty" as used in the Fourteenth Amendment may appellant's right to wear a beard while assigned to classroom teaching at John Muir High School be properly deemed one of these constitutionally unnamed but constitutionally protected personal liberties under the due process provisions of the federal and state Constitutions? We believe that it may, and that it should be. In *Kent* v. *Dulles, supra,* at page 126, the United States Supreme Court, speaking with respect to the corresponding provision of the Fifth Amendment to the United States Constitution, said: ". . . Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, *or wears,* or reads." (Italics added.) A beard was part of what appellant wore and it obviously was close to his heart.

---

[4] *Fort* does not mention the due process provisions of the federal and state Constitutions, but an examination of the authorities relied on by Mr. Chief Justice Gibson in his opinion for the constitutional status accorded this conduct indicates this is what he had in mind.

The next question to be answered is this. If appellant possessed a constitutional right to wear a beard while teaching in a classroom at John Muir High School, to what degree of protection is this constitutional right of personal liberty entitled? For an answer to this question we turn first to *Griswold* v. *Connecticut, supra,* 381 U.S. 479, where the United States Supreme Court held that the personal right of marital privacy was entitled to "Bill of Rights" protection against state interference and said that certain of the other private personal liberties, such as those established by the *Pierce* and *Meyer* cases, likewise merited First Amendment degree protection. (Pp. 482-483.) ■■■ It seems to us that the wearing of a beard is a form of expression of an individual's personality and that such a right of expression, although probably not within the literal scope of the First Amendment itself, is as much entitled to its peripheral protection as the personal rights established by *Pierce* and *Meyer* with respect to the right of parents to educate their children as they see fit. It will be noted that these last mentioned rights likewise relate largely to nonverbal conduct rather than to speech itself, but so does, to a significant degree, the constitutional right of political activity established in California by *Fort, supra,* and so does, for example, picketing (*Thornhill* v. *Alabama,* 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736]), and the carrying of a red flag (*Stromberg* v. *California,* 283 U.S. 359 [75 L.Ed. 1117, 51 S.Ct. 532, 73 A.L.R. 1484]).

We next turn to *Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409], where our own Supreme Court, speaking through Mr. Justice Tobriner, defined the permissible limits of public restrictions upon political activities of public employees, another First Amendment right, as follows: ". . . Similarly, in the present case, we hold that a governmental agency which would require a waiver of constitutional rights as a condition of public employment must demonstrate: (1) that the political restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints outweigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available." (P. 501.)[5]

---

[5]These three tests have been recently reiterated by our Supreme Court in another context. (*Parrish* v. *Civil Service Com.,* 66 Cal.2d 260, 271 [57 Cal.Rptr. 623, 425 P.2d 223].)

■ Let us apply these three tests of constitutionality of the infringement of a First Amendment right to the administrative policy of respondents under review. There is nothing in the record before us to show that *as a matter of actual experience* (Cf. *Forstner* v. *City & County of San Francisco,* 243 Cal.App.2d 625, 630-632 [52 Cal.Rptr. 621]) the wearing of beards by male teachers at John Muir High School did disrupt or impair classroom discipline or the teaching process there as the principal never permitted any such beards to be worn there. (Cf. *Board of Trustees* v. *Owens,* 206 Cal.App.2d 147, 157 [23 Cal.Rptr. 710].) In fact, the experience of appellant himself and the then current actual experience of another classroom teacher, were both directly to the contrary.[6]

This leaves as the sole evidentiary basis of the administrative policy of the principal of John Muir High School, the experienced, expert and professional, but nevertheless *a priori,* judgment of himself and of respondents' superintendent that the wearing of beards by male teachers would render more difficult the enforcement of the school rule against male students wearing beards. It is to be noted that the policy in question prohibited all beards on male teachers regardless of their neatness, cleanliness and general appearance. Consequently, in this sense, this rule was not a matter of common social amenities, of acceptable dress, good grooming and good taste for male teachers. It was instead, simply putting into effect the principal's and the superintendent's opinion that the wearing of a beard by male teachers would set a bad example for male students and would encourage them to violate the school rule against their wearing beards.

We believe that this fear of these professional administrators and educators of the probability of greater difficulty in the enforcement of the ban against beards on male students, when coupled with the greater desire among the male students on this particular campus to grow beards, and the problem that had existed in this respect on this campus since at least 1956, furnished a rational basis for the restriction in question which related to the effectiveness of the educational system there. It is a well-known fact that students tend to imitate their teachers in dress and appearances as well as in other forms of conduct, and one student at least, at John Muir was found to have worn a beard in emulation of appellant. (*Board*

---

[6]In the *Forstner* opinion it was noted that a teacher at Lowell High School in San Francisco testified that the wearing of a beard actually increased his teaching effectiveness. (P. 631.)

*of Education* v. *Swan, supra,* 41 Cal.2d 546, 552; *Johnson* v. *Taft School Dist.,* 19 Cal.App.2d 405, 408 [65 P.2d 912]; *Goldsmith* v. *Board of Education,* 66 Cal.App. 157, 168 [225 P. 783].) Hence, the policy under review meets the first of the *Bagley* tests.

But we do not believe that the principal's and superintendent's fear, however rationally founded in professional and experienced judgment, and however closely related to the fundamental educational purpose of our public school system, meets the remaining two *Bagley* tests. The only benefit that the public gains from this restraint on the appearance of male classroom teachers at John Muir High School is the probably easier enforcement of the school rule against male students wearing beards. In our opinion, though, this benefit does not outweigh the resulting impairment of appellant's constitutional right to wear such a beard while teaching in a classroom at John Muir High School, and certainly, so far as the effective enforcement of the school rule against male students wearing beards is concerned, there are clearly other alternatives open to respondents in the way of deterrents, sanctions and penalties against male students themselves which are less subversive of appellant's constitutional right than is the administrative policy in question. This is particularly true in view of the fact that a beard cannot be donned and doffed for work and play as wearing apparel generally can (*Forstner, supra,* p. 634), and therefore the effect of a prohibition against wearing one extends beyond working hours.

A beard, for a man, is an expression of his personality. On the one hand it has been interpreted as a symbol of masculinity, of authority and of wisdom. On the other hand it has been interpreted as a symbol of nonconformity and rebellion. But symbols, under appropriate circumstances, merit constitutional protection. (See *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624, 632-633 [87 L.Ed. 1628, 1634-1635, 63 S.Ct. 1178, 147 A.L.R. 674].) We do not know why appellant chose to start wearing a beard again at the start of the school year 1963-1964 at John Muir High School in Pasadena, California; but, regardless of his reason for so doing— whether it was in emulation of such bearded great men before him as John Muir himself, Socrates or Abraham Lincoln, to mention but three, or as a gesture of nonconformity to the prevailing custom of this generation of clean-shaven male adults or for other reasons—we think that *on balance* as stated in *Bagley,* his constitutional right to do so outweighs

the *a priori* judgment of the principal and superintendent, however experienced, expert and professional such judgment may have been. Prior restraints of expression may not ordinarily be used to limit First Amendment freedoms.[7] (*Weaver* v. *Jordan,* 64 Cal.2d 235, 241 [49 Cal.Rptr. 537, 411 P.2d 289].)

This is not to say that all male teachers at all high schools, regardless of circumstances, may wear beards while they teach in classrooms and that the practice may not be prohibited or otherwise restrained under appropriate circumstances. What we hold is simply that, on the record before us, *with the complete absence of any actual experience at the high school involved as to what the actual adverse effect of the wearing of a beard by a male teacher would be upon the conduct of the educational processes there,* beards as such, on male teachers, without regard to their general appearance, their neatness and their cleanliness, cannot constitutionally be banned from the classroom and from the campus. (Cf. *Re Donald B. Christie* (Benefit Decision, Case No. 64-2254, California Employees Insurance Appeals Board), where enforcement of a company rule against male employees wearing beards while working was held good cause for leaving the employment in question.)

The fact that appellant promised respondent not to wear a beard while engaging in classroom teaching at John Muir High School is, on the basis of what we have already said, without legal consequence since the enforcement of such promise under the conditions already stated constitutes an unconstitutional condition of public employment within the meaning of *Bagley.* (*Rosenfield* v. *Malcolm,* 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697].)

The final question raised by this appeal is whether appellant suffered a legally remediable detriment by being transferred to home teaching from classroom teaching since his pay and rank remained the same. We believe he did. As a classroom teacher he taught but one course, government, and that only to high school seniors. As a home teacher he taught on the average some seven different courses a week, and those to sophomores, juniors and seniors. As a classroom teacher he enjoyed during working hours the rather constant company of

---

[7] Of course, the constitutional right of free speech of a public employee is a limited one. He may not advocate illegal conduct. (*Pranger* v. *Break,* 186 Cal.App.2d 551, 556-557 [9 Cal.Rptr. 293].) Likewise, a public school teacher, while teaching, may not wear distinctly religious garb in violation of a state school regulation to the contrary. (*O'Connor* v. *Hendrick,* 184 N.Y. 421 [77 N.E. 612, 614, 6 Ann.Cas. 432, 7 L.R.A. N.S. 402].)

the remaining high school faculty; as a home teacher he had extremely limited contact with this faculty during these hours. Home teaching assignments within respondent district were ordinarily made, either in response to specific request therefor or where a teacher had shown an inability to maintain classroom discipline. Neither of these two conditions obtained with respect to appellant. Obviously the change in teaching assignment in question was detrimental to him and was made solely because of his insistence on wearing a beard while teaching in a classroom.

For the foregoing reasons, the judgment below is reversed.

Ford, P. J., and Moss, J., concurred.