[Civ. No. 8685. Fourth Dist., Div. Two. May 13, 1968.]

KEVIN AKIN, a Minor, etc., et al., Plaintiffs and Appellants. v. BOARD OF EDUCATION OF RIVERSIDE UNI- FIED SCHOOL DISTRICT, Defendant and Respondent.

A. L. Wirin, Fred Okrand, Laurence Sperber and Tony Geram for Plaintiffs and Appellants.

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, and W. W. Miller, Deputy County Counsel, for Defendant and Respondent.

KERRIGAN, Acting P. J.—Petitioners are mother and son. During the summer months of 1965, the 15-year-old minor, hereafter designated as "petitioner," grew a beard which was neat in appearance and trimmed regularly. On September 8 he enrolled at Polytechnic High School in Riverside, one of the secondary schools within the respondent-board's jurisdiction. He was suspended shortly thereafter solely for the reason that he refused to shave his beard as required by the board's "Good Grooming Policy" adopted on September 20, 1965. He then attended a private school for the balance of the 1965-1966 school year where he was permitted to wear his beard. An appeal initiated in March 1966 to the board of education proved unsuccessful.

On September 12, 1966, the minor, who had then attained the age of 16 years, again endeavored to enroll at Polytechnic High School but was denied admission by order of the high school principal and the district superintendent because he refused to remove his beard.

On September 16, 1966, the minor, acting through his mother as guardian ad litem, filed a petition for writ of mandate in the Riverside Superior Court, wherein he sought a decree directing the respondent-board to allow him to enroll at Polytechnic High without having to shave off his beard in conformity with the "Good Grooming Policy" of the board.

During the hearing on the petition, both sides presented oral and documentary evidence. The minor testified to the following effect: When he entered the private school after being expelled from the public institution for the school year 1965-1966, he continued to wear his beard; his academic work was satisfactory; his beard presented no problem with other students except for a brief period of adjustment; he intermingled socially with the other students and participated in sports while wearing his beard; his reason for having a beard involved a personal liking for such adornment, influenced in part by his father's experience in wearing a beard.

A teacher at the private school attended by petitioner testi-

fied that: He taught the bearded petitioner-minor in four classes during the 1965-1966 school year; the boy was a good student and well-behaved; his relationship with the other students was satisfactory; the beard caused no distraction to other students after the initial reaction had diminished; in his opinion the wearing of a beard or moustache in the secondary level of education creates no problems in discipline or education; none of the other male students at the private school wore beards; the private school had an enrollment of 35-40 students ranging in age from 3-17 years; he did not have a teaching credential inasmuch as one was not required to teach at the private school.

Petitioner's next witness was a 17-year-old public school student who testified that: He attended summer session at North High in Riverside the previous summer and wore a beard; the principal, officials, and faculty members observed his apperearance but did not order him to remove his beard; the presence of his beard did not cause him any problems with his fellow-students.

The petitioner-mother narrated that: Her husband had worn a beard for some two years before the minor decided to grow one; after the boy was expelled from Polytechnic High, she enrolled him at the private school at a considerable financial hardship to the family; he had done well academically at the private institution, but she and the father could not afford to send Kevin to a private school in the future and wanted him enrolled at Polytechnic High.

Three witnesses testified in behalf of the respondent-board. The witnesses were the Superintendent of the Beverly Hills Unified School District, the Principal of Polytechnic High, and the Superintendent of the Riverside Unified School District. The testimony of these witnesses may be stated in the following succinct fashion: All have been connected with secondary education for many years; the Good Grooming Policy embodied in the district's Discipline Code was formulated as a result of the study and efforts of many persons concerned with the educational processes of young students over a considerable period of years; the policy governing students' appearance and dress was developed for the purpose of creating a good climate for the educational process; permitting a student to wear a beard was likely to result in the disruption of the educational system.

Supplementally, the Polytechnic principal recounted past experiences with secondary students with moustaches. In one

instance, a moustached foreign exchange student attended Polytechnic High and "problems" resulted when some students wished to emulate him while others teased and harassed him. On another occasion, a basketball player was ordered to shave off his moustache because of the disruption created when other students indicated they would like to follow suit.

Upon the conclusion of the hearing and the rendition of a memorandum decision, the trial court entered its findings and judgment whereby it denied the petition and discharged the alternative writ.

Petitioner initially maintains that the rule adopted by the respondent requiring male students to be clean-shaven is violative of his rights of freedom of speech and expression guaranteed by the First Amendment of the United States Constitution and section 9, article I of the California Constitution, and further deprives him of his right of "liberty" under the Fourteenth Amendment of the United States Constitution and section 13, article I of the California Constitution. (See *Finot* v. *Pasadena City Board of Education,* 250 Cal.App.2d 189 [58 Cal.Rptr. 520].)

In *Finot, supra,* it was held that the transfer of a high-school teacher from classroom teaching to home teaching solely because the teacher insisted upon wearing a beard in violation of school policy, which was established because school authorities feared that allowing a teacher to wear a beard would make it difficult to enforce a school rule against students wearing beards, constituted an unconstitutional denial of the teacher's rights, in the absence of any experience of the high school involved as to what the actual adverse effect of the wearing of a beard by a teacher would have upon the conduct of the educational process. A teacher's right to wear a beard was viewed as a protected personal liberty granted him under the "due process" provisions of the federal Constitution, and further as a form of expression entitled to the "peripheral protection" of the First Amendment. The only benefit gained by the public from the restraint on the appearance of classroom teachers was deemed outweighed by the right of the teacher to wear a beard, since other alternatives were open to the school board by way of deterrents, sanctions and penalties against male students themselves, and these alternatives were regarded as less subversive of the teacher's rights.

While a male adult teacher may enjoy a constitutional

right to wear a beard where good cause for a school's administrative policy banning the wearing of beards by teachers has not been shown to exist, and assuming that such a constitutional right vests by implication in a minor-student (see *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624 [87 L.Ed. 1628, 63 S.Ct. 1178, 147 A.L.R. 674] ; *Robinson* v. *Sacramento City etc. School Dist.,* 245 Cal.App.2d 278, 291 [53 Cal.Rptr. 781] ), it is manifestly clear that not every public restriction or limitation placed upon the exercise of secondary students' constitutional rights is ipso facto prohibited. (See *Robinson* v. *Sacramento City etc. School Dist., supra.*) Where there is an invasion of protected freedoms ''. . . the power of the state to control the conduct of children reaches beyond the scope of its authority over adults. . . .'' (*Ginsberg* v. *State of New York,* 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274].) The imposition of reasonable restraints on the exercise of constitutional rights may be proper. (*Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 501-502 [55 Cal.Rptr. 401, 421 P.2d 409] ; *Fort* v. *Civil Service Com.,* 61 Cal.2d 331, 337-338 [38 Cal.Rptr. 625, 392 P.2d 385] ; *Robinson* v. *Sacramento City etc. School Dist., supra,* pp. 288-289.)

In an unreported decision, which is not binding upon us, *Pelletreau* v. *Board of Education of the Borough of New Milford,* the New York State Board of Education recently ruled that a local school board could not expel a student because of the length of his hair. However, in two authoritative cases, *Leonard* v. *School Committee of Attleboro,* 349 Mass. 704 [212 N.E.2d 468, 14 A.L.R.3d 1192], and *Ferrell* v. *Dallas Independent School Dist.,* 261 F.Supp. 545, the Supreme Court of Massachusetts and the Federal District Court of Texas held that school dress regulations prohibiting long hair and barring students from attending classes with long hair are entirely proper when their purpose is to prevent disruption of a proper classroom atmosphere or decorum. In its decisional process, the Massachusetts Supreme Court rationalized that the interests of teachers, administrators and the community-at-large are deemed paramount to the right of a student to wear his hair long. Society expects public education to concern itself with building young citizens as well as teaching; by adopting such a regulation, a school board is acting reasonably in considering the absolute necessity of maintaining a proper academic atmosphere in the classroom and on campus.

■ The California Legislature is vested with the power to carry out the mandate of the operation of a free public school system in California. (Cal.Const., art. IX, § 1.) The Legislature has conferred upon school boards statutory authority to promulgate rules and regulations governing the conduct and operation of public schools. "Every school district shall be under the control of a board of . . . education." (Ed. Code, § 921.) "The governing board of each school district shall prescribe and enforce rules not inconsistent with law or with the rules prescribed by the State Board of Education, for its own government." (Ed. Code, § 925.) All pupils must comply with school regulations. (Ed. Code, § 10609; Cal.Admin. Code, tit. 5, Education, art. 7, p. 50 § 62.) A board of education of a school district has power to adopt a Code of Pupil Discipline and, as a part thereof, a "Good Grooming Policy" to insure personal cleanliness and neatness of dress (see Cal. Admin. Code, tit. 5, art. 7, §§ 62, 64), providing the rule does not unreasonably infringe upon the exercise of a constitutional right. (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 501-502.) Presumably, it was pursuant to the foregoing statutory authority that the regulation was adopted requiring male high school students in the respondent-district to be "clean-shaven."

■ The decisive issue confronting us is simply whether the respondent-school board's Good Grooming Policy constitutes an unreasonable infringement of petitioner's constitutional rights. In order to determine this question, we turn, as did the court in *Finot* v. *Pasadena City Board of Education, supra,* 250 Cal.App.2d 189, 199, to the tests contained in *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 501-502. ■ In *Bagley* it was determined that a governmental agency seeking to impose restrictions on the exercise of an individual's constitutional right must demonstrate that: (1) The government's restraint rationally relates to the enhancement of the public service; (2) the benefits that the public gains by the restraint outweigh the resulting impairment of the constitutional right; and (3) no alternatives less subversive of the constitutional right are available.

■ Converting these guidelines to the facts and circumstances of the present case, it becomes incumbent upon us to determine: (1) Whether the restraint imposed on the male students' freedom to grow a beard, as evidenced by the respondent-district's "Good Grooming Policy," rationally

and reasonably relates to the enhancement of a free public education; (2) whether the benefits which the public gains by the restraint prohibiting a beard outweigh the resulting impairment of the students' right to grow a beard; and (3) whether any alternative less subversive of the students' constitutional right is available.

In the case under review, there was evidence presented at the trial level to the following effect: The administrative policy of the school board was the result of the considered judgment of a number of persons who were experienced in the field of education; it was the opinion of administrative and teaching experts that the wearing of a beard would be definitely disruptive of the educational process; such a disturbance would have a prejudicial effect on the educational environment and adverse effects on other students; the academic system and maintenance of discipline were best served when there were no such influences; proper classroom atmosphere and decorum flourished where such influences were not present and where students were not subjected to distraction by other pupils.

Moreover, the record before us, as distinguished from *Finot* v. *Pasadena City Board of Education, supra,* 250 Cal.App.2d 189, and *Forstner* v. *City etc. of San Francisco,* 243 Cal.App. 2d 625 [52 Cal.Rptr. 621], contains evidence to show that as a matter of actual experience, the wearing of beards by male high school students did constitute a disruptive influence in the educational process. Testimony to the effect that disruption resulted when male students wished to follow the example set by the foreign exchange student and the basketball player, together with evidence that the foreign visitor was subjected to teasing and harassment, provided a sufficient basis for the trial court to conclude that the requisite of actual evidence of disruption was satisfied. (*Finot* v. *Pasadena City Board of Education, supra*; see also *Blackwell* v. *Issaquena County Board of Education,* 363 F.2d 749; cf. *Burnside* v. *Byars,* 363 F.2d 744.)

The public derives benefit where public school students are academically trained in a classroom climate devoid of disruptive influences. Manifestly, the public assumes the cost of maintaining the public school system and is entitled to have its schools operated with a minimum of interruption. The parents of the majority of male students who are clean-shaven enjoy the right to have their youngsters educated in a classroom setting free of disturbances and distractions. Expert

opinion established that it is injurious to the educational process when a deviation on the part of one student leads to the lack of acceptance on the part of many students. Good study habits and proper conduct on the part of youngsters constitute attributes which are beneficial to the general public and far outweigh the restraint on the peripheral right to grow a beard.

Finally, in applying the *Bagley* formula, it does not appear that an alternative less subversive of petitioner's right to grow a beard was available. The respondent-board, confronted with the expert opinion of educators, coupled with actual experience at the high school level as to the adverse effect of the wearing of moustaches by male students, was placed in the situation of adopting a Good Grooming Policy to either permit moustaches and beards with the attendant disruption or institute the clean-shaven rule. There was no middle course or compromise available. Under such circumstances, the board would have been neglecting its responsibilities by taking a position of inaction.

Consequently, in our judgment, the criteria enunciated in *Bagley* have been fully satisfied, and the trial court was justified in concluding that the regulation subjected to attack herein contributed to the maintenance of order and decorum within the educational system.

 It is next urged that because a beard cannot be donned and doffed for work or play as wearing apparel generally can (see *Finot* v. *Pasadena City Board of Education, supra,* 250 Cal.App.2d 189, 201; *Forstner* v. *City etc. of San Francisco, supra,* 243 Cal.App.2d 625, 634), the board's ruling has the effect of extending into petitioner's home life, thereby violating his right of privacy. (See *Griswold* v. *State of Connecticut,* 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].) This argument has been advanced before. (See *Leonard* v. *School Committee of Attleboro, supra,* 349 Mass. 704 [212 N.E.2d 468, 14 A.L.R.3d 1192]; *Antell* v. *Stokes,* 287 Mass. 103 [191 N.E 407].) In *Leonard supra,* the answer was stated thusly: "[T]he domain of family privacy must give way insofar as a regulation reasonably calculated to maintain school discipline may affect it. The rights of other students, and the interest of teachers, administrators and the community-at-large in a well-run and efficient school system are paramount."

 Petitioner finally contends that the respondent-board

applied its Good Grooming Policy in a discriminatory fashion in that it permitted other students to attend schools within the district's jurisdiction while wearing moustaches and beards. However, the record reflects that the petitioner was not denied the equal protection of the law as guaranteed by the California and United States Constitutions. The board's application of the clean-shaven rule was uniform. The basketball player was ordered to remove his moustache and he complied. ▇ Furthermore, petitioner was not denied due process before his expulsion. He was afforded an opportunity to appear before the board and explain his reasons for desiring to wear a beard. Initially, he maintained he wore the beard because of religious convictions. However, he later abandoned the religious concept and claimed his right to wear a beard was based on the concept of freedom of expression under the First Amendment of the United States Constitution. ▇ There was no element of intentional or purposeful discrimination established (see *Snowden* v. *Hughes,* 321 U.S. 1, 8 [88 L.Ed. 497, 502, 64 S.Ct. 397]), nor any showing of clear and intentional discrimination. (*Yick Wo* v. *Hopkins,* 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].) Rather, the board required all students to comply with its disciplinary standards.

The judgment is affirmed.

Tamura, J., concurred.

A petition for a rehearing was denied May 29, 1968, and appellants' petition for a hearing by the Supreme Court was denied July 10, 1968. Peters, J., was of the opinion that the petition should be granted.