220 So.2d 534 (1969)
Edward BLANCHET, Plaintiff-Appellant,
v.
VERMILION PARISH SCHOOL BOARD, Defendant-Appellee.
No. 2606.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1969.
Rehearing Denied April 2, 1969.
Writ Refused May 9, 1969.
*535 Deshotels & Maraist, by O. H. Deshotels, Jr., Kaplan, for plaintiff-appellant.
Kibbe, Edwards, Cooper & Sonnier, by Charles R. Sonnier, Abbeville, for defendant-appellee.
Before TATE, FRUGE, and HOOD, Judges.
TATE, Judge.
The plaintiff is a tenured teacher protected by the provisions of LSA-R.S. 17:441-444, commonly called the "Teacher's Tenure Act". He was charged with willful neglect of duty because he refused to wear a necktie, contending that a new parish regulation requiring teachers to do so was unreasonable, illegal, and unconstitutional.
The plaintiff Blanchet brings suit to enjoin the enforcement of this regulation and also to enjoin the Vermilion Parish School Board from suspending or discharging him for failure to comply with what *536 he contends to be an invalid regulation. After trial, the District Court dismissed his suit.
The central issue of this litigation concerns the reasonableness or not of the regulation requiring male teachers to wear neckties in the performance of their duties during the school day. To be more precise, the essential question is whether the regulation is so unreasonable, or is invalid for other cause, so that the courts may set it aside.

1.
On September 28, 1967, after the start of the school year 1967-68, the school board adopted the necktie resolution in controversy here. (See Appendix A below for full text of the resolution.) The principals were notified that the policy and its effective date of implementation were to be discussed later.
On receiving word of the new policy, the plaintiff Blanchet formally protested its adoption. His letter respectfully requested the school board to reconsider the policy as an unreasonable restriction on a teacher's personal dress and as not related to any educational necessity. Responding by a special meeting, the school board reiterated its approval of the policy. Later, the board again voted (8-5) on October 26th to retain the necktie requirement as mandatory instead of permissive.
On that same date, a majority of the school board adopted a resolution stating that, whereas written and signed charges of willful neglect of duty had been filed against Blanchet, the board would hold a hearing on these charges on November 16th. The following day (October 27th) the superintendent prepared and signed these charges and then forwarded a copy to the teacher.
Following the hearing of November 16th, the board's findings and ruling stated: "* * * This Board believes that this necktie resolution has enhanced the teacher-public relationship. Most of all, we believe that it will tend to command more authority and respect from the students, and we believe this to be an asset to our teachers. We are of the firm belief that we have the authority to make this regulation, for it was placed in our hands along with the responsibility to operate our school system properly."
As disciplinary action for failure to comply with the resolution, a majority voted to suspend Blanchet for thirty days without pay, effective November 16, 1967, with his reinstatement to be conditioned upon an affirmative statement that he intended thereafter to comply with the necktie resolution. The ruling further provided for Blanchet's discharge if he still refused to comply after this thirty-day period.
On December 12, 1967before the period of suspension had expired (which is procedurally relevant, see below)the plaintiff Blanchet filed this present suit to enjoin the school board from enforcing this allegedly invalid resolution or from disciplining or discharging him for failure to obey it. In a letter to the school board, reiterating an attitude he had expressed on the stand, he stated: "* * * My refusal to comply is not challenge of your legal authority, it is the only possible way I have of testing your authority to govern the personal rights of the individual who teaches."
Other exhibits in the evidence show that, on December 12th (the date he filed suit), he was informed that, following the 30-day suspension, he would not be reinstated to his teaching position unless he formally advised the school board superintendent not later than Friday, December 15, 1967, that he intended to comply with the Board policy requiring male teachers to wear neckties. On January 18, 1968, the plaintiff was informed that the school board would not accept his offer to continue teaching pending judicial determination of the reasonableness of the regulation (the plaintiff having suggested that *537 the regulation's effectiveness be suspended pending conclusion of this litigation).

2.
At this point it may be well to reiterate the limited nature of judicial review in instances such as the present. State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153, is perhaps the leading decision on judicial review of school board's disciplinary actions against tenured teachers. In its opinion, our state Supreme Court stated, 19 So.2d 167:
"There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, * * * or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering."
The court also stated, 19 So.2d 167-168:
"* * * It is indisputable that the jurisprudence of this State is settled beyond doubt that where a statute creates a Board and grants to it certain administrative and executive functions and responsibilities, the courts will not interfere with the bona fide judgment of the Board based upon substantial evidence. It is only where the complainant shows there has been an invasion of his rights by the Board exceeding its powers or doing him an injustice that the courts have set aside the actions of the Board. * * *"
In recent summary in Moffett v. Calcasieu Parish School Board, 179 So.2d 537, 539, this court held: "Generally, the scope of judicial review of administrative agencies, although varying with the statutes involved, is limited to a determination of whether the action of the agency was: (1) in accordance with the authority and formalities of the statute; (2) supported by substantial evidence; and (3) arbitrary or an abuse of discretion. State ex rel. McAvoy v. Louisiana State Board of Medical Examiners, 238 La. 502, 115 So.2d 833; State ex rel. Williams v. Avoyelles Parish School Board, 147 So.2d 729 (La.App. 3rd Cir. 1962); 73 C.J.S. Verbo Public Administrative Bodies and Procedure §§ 202-210, p. 548 et seq. Except for these purposes, the court will not review the wisdom, reasoning or judgment of administrative agencies, for to do so would substitute the discretion of the court for that of the agency."
We should further note that the parish school boards are authorized by statute to make and adopt rules and regulations not inconsistent with law or with regulations of the State Board of Education. LSA-R.S. 17:81. A tenured teacher may be disciplined or discharged for failure to comply with reasonable regulations which are adopted for the proper administration of the schools. State ex rel. Cody v. Caldwell Parish School Board, 215 La. 645, 41 So.2d 461; Reed v. Orleans Parish School Board, La.App.Orl., 21 So.2d 895.

3.
The plaintiff does not deny that he formally refused to comply with the regulation requiring him to wear a necktie on the school premises during the school day, as the evidence shows. His position, quite simply, is that only by such refusal may he secure court review of what he regards to be an arbitrary regulation unrelated to any educational aim, as well as an unreasonable infringement upon his *538 personal liberty of dress, so long as he dresses neatly and in accord with modes and conventions of his community.
We, like the trial court, find impressive and persuasive the evidence produced in support of his contention.
Almost all of the educator witnesses testified that for years most male teachers in the rural areas of the parish had taught without neckties (dressed neatly, but with sport shirts or plaid shirts), and without complaint or without deleterious effects on education for this lack. During the spring and summer months, wearing neckties was uncomfortably hot in the wooden rural school of the plaintiff's neighborhood, which was not air-conditioned. Furthermore, evidence as to the practice in other parishes of this state showed that only a small minority of other school boards, only 6 out of 47 reporting, had adopted a similar necktie resolution.
The present resolution, regulating the personal appearance of teachers, had evolved from the deliberations of a committee of teachers appointed by the school board to draw up a handbook of regulations to be published (later). The committee had considered the adoption of the necktie-requirement, but had rejected it. When the committee's proposal came before the board, however, the board by impromptu amendment had added the requirement for neckties to the proposal before adopting it as a resolution. (The board's addition is represented by the last two sentences of the resolution, italicized in Appendix A below.)
The basis for this board-added requirement was the board's feeling that wearing neckties enhanced the image of the teacher as a professional man, leading to more community and student respect for him. Each member of the board testifying admitted that there had been no previous complaints as to lack of respect or effectiveness as to teachers who did not wear neckties (for perhaps half or more of the teachers had not done so before the 1967 resolution). The board witnesses admitted that all members of the board did not wear neckties themselves at all board meetings.
Additional evidence indicated that in the plaintiff's rural community most men did not wear neckties regularly, either at work or for community activities such as church-going, PTA meetings, etc. Likewise, attempts were made to show that current high fashion for male attire in the metropolitan centers did not any longer regard neckties as an essential for formal attire.
The evidence as to the plaintiff himself indicates that in his eighteen years of teaching he had always been neatly dressed, although he usually did not wear a tie. It shows him to have been a dedicated and effective teacher, an assistant principal at his school, a sober church-going family man, father of seven children.
As the trial court noted, the plaintiff Blanchet resisted the school board's regulation respectfully and not in a spirit of rebellion, but out of a sincere belief that regulation infringed upon his personal liberty to dress in accordance with the modes of his community and his own lifetime habits.
Having stated the forceful reasons which could easily have influenced the school board to act otherwise, we must nevertheless state that, in view of the limited nature of judicial review of school agency actions, we do not find the regulation to be so unreasonable as to be beyond the school board's powers.
Some of the educational witnesses did believe that the teacher's formality of dress enhanced the teacher's authority in the eyes of the students. Like the trial court, we take judicial notice that most, although not all, of the leading citizens and professional men of the communities of the area do habitually wear neckties (especially in winter time) as representing a conventional attire for those in positions *539 of leadership. We further note that, following adoption of the resolution and the resulting present controversy, the executive committee of the parish teachers' organization did express approval of the school board resolution as justified. A minority of other school boards likewise have adopted a necktie resolution as furthering educational policies in their own parishes.
We are unable to hold that the regulation in question is so unsupported by substantial evidence and reason as to be beyond the power of the defendant school board to adopt, having in mind the presumption of regularity and validity that attaches to discretionary school agency actions and the lack of power of a court to substitute its views for the school board's when there is a rational basis for the latter's discretionary determination.

4.
Various other contentions of invalidity are advanced. The trial court's excellent oral reasons for judgment, transcribed, correctly dispose of them also. No cited statute or decisional authority supports the plaintiff's positions as to them. Without detailed discussion, we agree with the trial court and reject plaintiff's contentions to the contrary, that:
(1) Under the ordinary meaning of language, the regulation was not vague (despite board members differing as to whether wearing various cowboy stringties, bowties, trick ties, etc., constituted compliance); (2) Although the women teachers did not have to comply with any arbitrary restriction as to dress, this did not render the regulation unreasonably discriminatory as to men teachers; (3) The regulation was nevertheless binding on parish teachers, although not first published in the official journal, as required, LSA-R.S. 17:91, 43:144, for the information of the public; (4) The adoption of the regulation did not impair the obligation of any prior "contract" for the school year 1967-68, since tenured school teachers are always subject to reasonable change of regulation by the employing school board; (5) Although recommended school practice is to have regulations affecting teachers first included in a printed handbook or manual for their guidance, this recommended practice is not incorporated in statute nor regulation of the State Board of Education; no legal authority prevents school boards from adopting regulations by resolution and reasonable notice to the teachers through the principals, as was done here.
The plaintiff Blanchet further pleads that the regulationdepriving him of his personal liberty to dress in accordance with the modes of his community, and founded on no educational necessityoffends the due process provisions of the federal and state constitutions, and the equal protection provision of the former. He points out that the personal liberty protected by the Fourteenth Amendment includes, as well as fundamental political liberties, also fundamental rights of a private and individual nature, such as the right to marry whom one wishes, the right to travel, the right to wear clothes of one's own choosing, the right to educate one's own children in private schools or to rear them in a foreign language, etc. Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070; Meyer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042; Finot v. Pasadena City Board of Education, 250 Cal.App.2d 189, 58 Cal.Rptr. 520 (1967) (invalidating a school policy forbidding male teachers to wear beards).
In view of some of the more recent federal pronouncements, the constitutional issue is not free from doubt. We nevertheless believe that, for the reasons stated earlier, the school board's necktie regulation may be held valid as not unreasonably restricting the personal liberty of the teacher-employee to dress as he wills. There is sufficient showing that the regulation *540 may be of value in the administration of public education, so that we do not find it to be an arbitrary or unreasonable restriction on personal freedom in the light of the educational purposes served thereby.

5.
We therefore reject all contentions by Blanchet to the effect that the school board regulation was invalid, and we affirm the trial court judgment refusing to enjoin the enforcement of the necktie regulation. We thus find that the plaintiff Blanchet was not justified in failing to obey it and was therefore subject to disciplinary action.
With regard to the disciplinary action, some preliminary observations are in order.
Blanchet has at all times signified his willingness to comply with the resolution if the courts hold it valid. From motives all concede to be of the utmost sincerity, this dedicated teacher and father of seven felt the regulation so unreasonably interfered with his personal liberty that, on the strength of this conviction, he chanced his livelihood and the career to which he had dedicated most of his adult life.
While we might lightly say that, after all, a necktie is only a piece of cloth, nevertheless, for the same motives which impelled the Boston merchants not to pay that insignificant little tax on tea just before this nation's independence, Blanchet felt strongly that this regulation impinged on his personal liberty to dress as he wished, without having any reasonable relationship to any educational value. Although we are unable to say that the school board's regulation was arbitrary or invalid, we likewise cannot say that Blanchet's position was frivolous.
However, we must reject his suggestion that the school board regulation should not apply to him pending judicial review. The administration of public schools through general regulation cannot, as the school board suggests, be made contingent upon judicial review of each such regulation. Further, a teacher who fails to comply with a regulation held valid is subject to disciplinary action, as previously noted.
The plaintiff's refusal to comply and his filing suit for judicial review of his suspension were taken at the risk, that if his contention was not upheld by the courts, he would lose his pay during the litigation-extended period of his suspension. (Of course, if the board's action were reversed by the court, then the teacher is entitled to full pay for any loss of salary sustained by reason of the school board's action. LSA-R.S. 17:443.)

6.
In summary, the school board had suspended Blanchet for thirty days and had provided for his discharge, if he did not affirmatively indicate he would comply with that resolution within this thirty-day period ending December 15, 1967. Before this period of suspension expired, Blanchet filed this suit (on December 12, 1967) for judicial review of the reasonableness of the school board regulation and of its action for suspending him for failure to comply with it.
The intended effect of filing the suit before Blanchet's discharge became effective was to seek judicial review of the suspension before the discharge became effective. Its further effect, we believe, was to extend the period of his suspension without pay and the period during which Blanchet's non-compliance did not constitute cause for discharge.
To hold otherwise would force Blanchet to comply with a regulation as to which he makes a non-frivolous contention of unconstitutionality and invalidityto force him to do so pending the court review which might find such restriction on personal freedom prohibited by constitution *541 or otherwise invalid. His exacted performance of offensive personal dress could never be undone. Our state constitution provides, Article I, Section 6: "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law * * *."
The statute itself reflects legislative intent for full and adequate judicial review. The disciplinary action was taken under LSA-R.S. 17:443 (as amended, 1956), which provides that a permanent teacher shall not be removed from office except upon printed and signed charges and only after hearing before the school board. The paragraph so providing concludes: "* * * Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction." The following paragraph of 17:443 then also authorizes judicial review after final discharge or disciplinary action, with the court having power to affirm or reverse the action of the school board in the matter.
Decree
For the reasons assigned, we affirm the judgment of the trial court dismissing the plaintiff's suit insofar as it seeks to enjoin the enforcement of the board's regulation of September 28, 1967 requiring male teachers to wear neckties.
In accord with the views expressed above, said judgment is amended, however, to further provide: It is further ordered that the defendant school board's ruling of November 16, 1967, is affirmed, thus suspending the plaintiff Blanchet without pay from his duties as classroom teacher and assistant principal, for thirty days and as extended during the further period of judicial review sought by the plaintiff, with the plaintiff Blanchet to be reinstated to his position, "under the condition and on his statement that he intends to comply with the policy requiring the wearing of neckties" within thirty days of the time the judgment of this court becomes final and executory, LSA-C.C.P. Art. 2167, see 28 U.S.C.A. § 2101, especially (f), said reinstatement to be effective at the start of the school year commencing next after the plaintiff timely notifies the school board of his willingness to comply.
The plaintiff-appellant is to pay all costs of these proceedings and of this appeal.
Affirmed, as amended.

Appendix A.
The school board resolution of September 28, 1967, provides, in full:
"Personal Appearance
"Each teacher is expected to give proper attention to his personal appearance. A pleasing appearance in dress and manner influences the reaction of students to the teacher and to the general learning environment. A teacher, also, comes in daily contact with the public, a public which is sometimes very critical of the appropriateness and neatness of the teacher's dress. The teacher who is particular about personal appearances not only contributes to his own acceptance by others, but also influences the attitudes of students and adults toward the teaching profession. The matter of appropriate dress should be of equal concern to men and women teachers and should reflect accepted standards of good grooming. In the interest of enhancing the image of the teaching profession, at school, in the classroom and in the community, it shall be required that male teachers wear neckties in the official performance of their duties during the course of the school day. Teachers of physical education, industrial arts and vocational agriculture, when teaching outdoor or shop classes, may wear dress appropriate to the teaching of those activities." (Italics ours.)
On Application for Rehearing.
En Banc. Rehearing denied.
SAVOY, J., recused.